104 P.3d 670 (2004)
STATE of Washington, Respondent,
v.
George WARD, Appellant.
No. 52609-0-I.
Court of Appeals of Washington, Division One.
November 22, 2004.
Publication Ordered January 14, 2005.
*671 Cheryl D. Aza, Corey Marika Endo, Washington Appellate Project, Seattle, for Appellant.
Erin Hairopoulos Becker, King County Prosecutor's Office, Seattle, for Respondent.
PER CURIAM.
George Ward was convicted of two counts of assault in the second degree. We agree with Ward that his counsel were ineffective in failing to request an instruction on the lesser included offense of unlawful display of a weapon. We reverse and remand for retrial.

FACTS
On the night of November 18, 2001, Thomas Tuttle, the owner of a towing and repossession company, went to George Ward's home to repossess a Buick Riviera. Tuttle was accompanied by his son-in-law, Jay Baldwin. Sometime between 8:00 and 9:00 p.m., Tuttle backed his unmarked tow truck into Ward's driveway behind Ward's Buick, and began to attach the towing mechanism. Baldwin got out of the truck to check that the mechanism was attaching properly.
As the car was being lifted, Ward appeared on the porch of his home. According to Baldwin and Tuttle, Ward pointed a gun, first at Baldwin, then at Tuttle through the rear window of the truck, and shouted at them to get away from the car and leave. Tuttle released the car, Baldwin got into the truck, and they drove a short distance away and called police. Kim Wilson, Ward's girlfriend, then drove off in the Buick.
When police officers arrived, Ward cooperated, acknowledged that he had a gun, and said he had a carry permit. Officer Massey found a loaded Smith & Wesson pistol in Ward's jacket pocket. The gun was similar in appearance to that described by Baldwin and Tuttle.
Ward was arrested. After being advised of his Miranda[1] rights, Ward told the arresting officer that two men had come to repossess his car and he had chased them off. He said he had just missed a car payment and would get it sorted out with the bank, but he was not going to let them repossess the car. In a search incident to the arrest, Officer Massey found a baggie of methamphetamine in Ward's pants pocket.
Ward was charged with two counts of assault in the second degree and one count of possession of methamphetamine. The jury found him guilty as charged, and found that Ward was armed with a firearm during the assaults. The trial court sentenced Ward to 5 months on each assault (an exceptional sentence below the standard range) and 5 months on the possession charge, to run concurrently. Consecutive 36-month firearm enhancements brought Ward's sentence to 77 months. The court also ordered Ward to provide a biological sample of DNA pursuant to RCW 43.43.754. Ward appeals his assault conviction on grounds of ineffective assistance of counsel, and also appeals his sentence.

DISCUSSION
Ineffective Assistance of Counsel. When a defendant claims he has been deprived *672 of the Sixth Amendment right to effective assistance of counsel, we begin with a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. In re Personal Restraint of Pirtle, 136 Wash.2d 467, 487, 965 P.2d 593 (1998) (citing Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To establish a claim of ineffective assistance of counsel, Ward must show that his trial attorney's representation was deficient, and that the deficiency prejudiced his defense. State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). To meet the first prong of this test, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Thomas, 109 Wash.2d at 226, 743 P.2d 816 (citing Strickland, 466 U.S. at 688, 104 S.Ct. 2052). To show prejudice, the defendant must show a reasonable probability that the outcome would have been different absent the attorney's deficient performance. Thomas, 109 Wash.2d at 226, 743 P.2d 816 (citing Strickland, 466 U.S. at 693, 104 S.Ct. 2052).
Ward argues that his attorneys were ineffective for failing to request a jury instruction on the lesser included offense of unlawful display of a weapon. A defendant is entitled to an instruction on a lesser included offense if two conditions are met: each of the elements of the lesser offense must be elements of the offense charged (the legal prong), and the evidence must support an inference that only the lesser crime was committed (the factual prong). State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978). The State concedes that unlawful display of a firearm is a lesser included offense of second degree assault with a deadly weapon, but contends the record did not support a rational inference that Ward committed only that crime, to the exclusion of assault in the second degree. See State v. Fernandez-Medina, 141 Wash.2d 448, 455, 6 P.3d 1150 (2000). In this inquiry, we view the evidence in the light most favorable to the party requesting the instruction. Fernandez-Medina, 141 Wash.2d at 455-56, 6 P.3d 1150.
To convict a defendant of second degree assault, the jury must find specific intent to create reasonable fear and apprehension of bodily injury. State v. Byrd, 125 Wash.2d 707, 713, 887 P.2d 396 (1995). Such intent may be inferred from pointing a gun, but not from mere display of a gun. State v. Eastmond, 129 Wash.2d 497, 500, 919 P.2d 577 (1996). To convict a defendant of unlawful display, the jury must find the defendant displayed a weapon in a manner manifesting an intent to intimidate another or warranting alarm for another's safety. RCW 9.41.270(1).
Ward testified that he believed Baldwin and Tuttle were trying to steal his car, and that Baldwin came toward him with a crowbar. Both he and Wilson testified that Ward told the men he had a gun, ordered them to leave his property, and then displayed the gun by opening his jacket. Ward and Wilson both testified that Ward did not point his gun. Viewing the evidence in the light most favorable to Ward, a jury could decide that Ward committed only the crime of unlawful display of a weapon. Ward was entitled to an instruction on unlawful display of a weapon because both the legal and factual prongs of the Workman test were satisfied.
The State points out that the unlawful display statute does not apply to any act committed in a defendant's place of abode, and argues that an instruction on unlawful display was unavailable because Ward was standing on his front porch at the time of the incident. This point was not really litigated, however. Testimony as to Ward's exact location at the time of the display was inconclusive,[2] but was sufficient for a rational jury to determine that Ward was no longer on his porch. Ward was entitled to the instruction.
The State also contends that counsel's failure to request the instruction was legitimate trial strategy, an "all or nothing" choice to force the jury to acquit on the greater charge and prevent conviction (by compromise or *673 otherwise) on the lesser. We have carefully examined the record, and must disagree.
First, the potential jeopardy for Ward was considerable. He faced 89 months in prison for the two assaults, including the mandatory firearm enhancements.[3] Unlawful display of a weapon, by contrast, is a gross misdemeanor carrying a maximum penalty of one year in jail and revocation of a concealed weapons permit. RCW 9.41.270(2); RCW 9.92.020. Misdemeanor offenses are not subject to the imposition of firearm enhancements. Former RCW 9.94A.510(3) (2000).
Second, Ward's defenses were the same on both the greater and lesser offenses. His theory at trial was lawful defense of self and property. These are complete defenses to both second degree assault and unlawful display of a weapon. RCW 9.41.270(3)(c). An instruction on the lesser included offense was therefore at little or no cost to Ward. If the jury had believed Ward acted lawfully, he would have been acquitted of both the greater and lesser offenses. If the jury did not believe Ward acted lawfully, but doubted whether he pointed his gun, he would have been convicted only of the misdemeanor.
Finally, self-defense as an all or nothing approach was very risky in these circumstances, because it relied for its success chiefly on the credibility of the accused. Ward testified he believed Tuttle and Baldwin were there to steal his car, and that Baldwin came toward him carrying a raised crowbar. But the arresting officers testified Ward told them he was trying to stop a repossession. This greatly impeached Ward's credibility on the defense of property theory, and also called into question his testimony that Baldwin was carrying a crowbar in a menacing fashion, thus undermining his theory of self-defense as well. Ward's credibility was further damaged when his testimony about the methamphetamine directly conflicted with his counsel's opening statement. Given the developments at trial, and the starkly different potential penalties, it was objectively unreasonable to rely on such a strategy.
In these circumstances, we can see no legitimate reason to fail to request a lesser included offense instruction. The all or nothing strategy exposed Ward to a substantial risk that the jury would convict on the only option presented, two second degree assaults.
As the United States Supreme Court has stated:
[I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction ... precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.
Keeble v. United States, 412 U.S. 205, 212-13, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).
It is also reasonably probable that the outcome would have been different. During its deliberations, the jury asked whether "assault in the second degree [can] occur if a deadly weapon is shown but not pointed at a victim." Clerk's Papers at 42. At sentencing, the trial judge imposed an exceptional sentence below the standard range, and commented:
Mr. Ward was indeed provoked in his actions by incredibly foolish acts by these men ... that but for the acts of the complainants, who appeared in the dark at Mr. Ward's home, without any identification, in an unmarked vehicle, ... that provoked the act that Mr. Ward exercised.
Report of Proceedings (June 27, 2003) at 23.
We reverse and remand for a new trial on the assault charges.
*674 Issues Decided in Anticipation of Remand. Ward also contends that the trial court violated double jeopardy principles when it imposed the two firearm enhancements for the use of a single pistol and that the sentencing condition requiring Ward to provide a DNA sample violated his state and federal constitutional rights. Because these issues may again arise upon retrial, we address them both.
Firearm Enhancements. Ward was sentenced to two consecutive 36-month firearm enhancements under former RCW 9.94A.510(3) for the use of a Smith & Wesson pistol during the two assaults. Ward contends the firearm enhancements violate double jeopardy principles, because only one pistol was used in the commission of the crimes.
Washington courts have repeatedly rejected double jeopardy arguments regarding weapon enhancements. State v. Huested, 118 Wash.App. 92, 95, 74 P.3d 672 (2003) (citing State v. Claborn, 95 Wash.2d 629, 628 P.2d 467 (1981)). In Claborn, the defendant was armed with a single pistol during commission of burglary and theft; the court imposed two separate firearm enhancements. The Supreme Court noted that even though the crimes were close in point of time, the enhancements applied to separate crimes with different elements. Claborn, 95 Wash.2d at 636-37, 628 P.2d 467. Secondly, the court held that double jeopardy was not implicated because the weapon enhancements were not criminal offenses, but "merely limit[ed] the discretion of the trial court ... in the setting of minimum sentences." Claborn, 95 Wash.2d at 637, 628 P.2d 467. In Huested, the defendant was convicted of committing first degree burglary and first degree rape while armed with a single knife. We held that double jeopardy was not violated by two weapon enhancements because RCW 9.94A.510(4) "unambiguously shows legislative intent to impose two enhancements based on the single act of possession a weapon, where there are two offenses eligible for an enhancement." Huested, 118 Wash.App. at 95, 74 P.3d 672.
These cases control. If Ward is again convicted of assaults on two separate victims, each with the use of a firearm, former RCW 9.94A.510(3)[4] requires multiple enhancements, served consecutively. We therefore reject Ward's arguments.
DNA Sample. RCW 43.43.754 requires convicted felons to provide DNA samples. Ward contends the statute authorizes a warrantless search without probable cause, in violation of the Fourth Amendment of the United States Constitution and the Washington Constitution. We reject his arguments for the reasons set forth in State v. Olivas, 122 Wash.2d 73, 856 P.2d 1076 (1993), and State v. Surge, 122 Wash.App. 448, 94 P.3d 345 (2004).
Reversed and remanded for a new trial.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Both Baldwin and Tuttle testified that they were not sure where Ward was at the time of the incident, but believed he had come down the porch steps. Wilson testified Ward was on the porch. Ward's own testimony was unclear.
[3] The standard range on each assault was 13 to 17 months, plus the mandatory 36-month firearm enhancement on each count. Former RCW 9.94A.510 (2000).
[4] Effective July 1, 2004, the relevant sections of former RCW 9.94A.510 were replaced by RCW 9.94A.533.