FILED
COURT OF APPEALS
DIVISION II

2013 APR 23 PM 12: 02

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42857-1-II |
| Respondent, | |
| v. | |
| JOSHUA MATTHEW WINGATE, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, J. — Joshua Matthew Wingate appeals the trial court's denial of his CrR 7.8 motion to vacate his two second degree assault convictions almost one year after our mandate issued following his first appeal. He argues that (1) he received ineffective assistance when (a) his trial counsel failed to request a lesser included jury instruction on unlawful display of a weapon, and (b) his previous appellate counsel failed to raise the same claim during Wingate's first direct appeal; and (2) the trial court erred in concluding at the recent CrR 7.8 hearing that it would have denied a lesser included instruction at trial even if counsel had requested one. The State cross-appeals the trial court's denial of its motion to transfer Wingate's CrR 7.8 motion to the court of appeals as a personal restraint petition (PRP) under CrR 7.8(c)(2), arguing that Wingate's CrR 7.8 motion was untimely.

No. 42857-1-II

We hold that Wingate's CrR 7.8 motion was timely, the trial court did not err in denying the State's motion to transfer Wingate's CrR 7.8 motion as a PRP, and Wingate fails to show that he received ineffective assistance of trial and appellate counsel. We affirm.

FACTS

I. ORIGINAL CONVICTIONS AND SENTENCES FOR ASSAULTS

In 2001, a jury convicted Joshua Matthew Wingate of one count of first degree assault[1] and two counts of second degree assault with firearm sentencing enhancements. In his first appeal, we described the facts underlying his convictions as follows:

> On June 21, 2001, Stephen Park discovered that his good friend, James Koo, was dating Park's former girlfriend, Elizabeth Kim. Park called Koo and told him he was "[c]oming down" to Koo's house to confront him about his involvement with Kim. Three of Park's friends, Joseph Feist, Chad Scott, and Marco Poydras, followed Park to Koo's house. Park had in mind that he might get into a fight with Koo.
> Wingate had been at an internet café playing computer games with friends. A friend told Wingate that Park was going to Koo's house "to pick a fight over Elizabeth." *Wingate, who had a concealed weapons permit, took his handgun and went to "see what was going on" at Koo's house.* Wingate knew of Park's reputation for violence and using weapons. When Wingate arrived, only Koo was present.
> When Park arrived, there were approximately 10 to 15 people at Koo's house. *According to Wingate, Park pulled a sawed off-shotgun from the trunk of his car, cocked it, and put it back into the trunk, leaving the trunk lid open.*
> Koo saw Park "pump" something from his trunk and put something in his back pocket before leaving his car to pursue him (Koo). Park denied having a shotgun or any other weapon. Nonetheless, Koo believed that Park intended to shoot him. When Koo refused to face Park or to let Park confront him, Park became frustrated and began chasing Koo around a truck parked in Koo's driveway. When Kim tried to stop Park, he pushed her to the ground.
> Wingate saw Feist, Scott, and Poydras standing by Park's car while Park was chasing Koo; Wingate thought the three men were "guarding" Park's open trunk and the sawed-off shotgun inside. *Believing that Park was "getting out of control," Wingate approached the three men guarding Park's trunk, pulled out*

_____

[1] Wingate does not challenge his first degree assault conviction in the instant appeal.

2

*his gun to scare them so he could retrieve Park's shotgun and remove it from Park's reach, and told them to move away from the car.* After the trio obliged, Wingate removed the shotgun from Park's trunk.

*Park saw Wingate pointing a gun at his three friends,* went over to the car, and challenged Wingate. Feist pulled a large black gun from his waistband. *Wingate threatened to shoot if Feist did not drop the gun;* Feist put his gun in Park's still-open trunk, and Wingate's friend took Park's shotgun from Wingate. Wingate pointed the gun at Park's chest, told Park that he (Park) and his friends were "acting like a bunch of little kids," and explained that Koo did not want to fight. Park retorted that the matter was none of Wingate's business.

Park understood that Wingate was pointing the gun at him in an attempt to persuade him to leave Koo alone and to leave the scene. But instead of leaving, or at least retreating, Park advanced toward Wingate, taunting, "What are you going to do? You going to shoot me?" Thinking that Park was pulling a gun from the back of his waistband, Wingate lowered his gun away from Park's chest and shot him in the leg.

*State v. Wingate,* 123 Wn. App. 415, 417-19, 98 P.3d 111 (2004) (alteration in original), *reversed in part by* 155 Wn.2d 817, 122 P.3d 908 (2005) (emphasis added).

The trial court imposed concurrent exceptional downward sentences, totaling 120 months of confinement (10 years). The trial court denied the State's motion to reconsider Wingate's exceptional downward sentences, but it did correct the sentences to run the firearm enhancements consecutively, resulting in 192 months (16 years) of total confinement. *See Wingate,* 123 Wn. App. at 420-21, n.4, 6.

II. FIRST APPEAL; REMAND TO RECONSIDER EXCEPTIONAL SENTENCE

The State appealed Wingate's exceptional downward sentence. Wingate cross-appealed all three of his assault convictions, arguing that (1) the trial court erred in giving a first-aggressor jury instruction, (2) trial counsel had rendered ineffective assistance in failing to propose an

"actual danger" jury instruction,[2] (3) the evidence was insufficient to support his convictions, and (4) prosecutorial misconduct prejudiced his case. *State v. Wingate*, noted at 133 Wn. App. 1027 (2006), *review denied*, 160 Wn.2d 1003 (2007). We rejected his insufficient evidence claim but agreed that it was error for the trial court to have given the first-aggressor instruction; we reversed all three convictions and remanded for a new trial, without addressing the remaining issues. *Wingate*, 123 Wn. App. at 423-24.

The Supreme Court reversed our holding that the first-aggressor instruction was error, thus reinstating Wingate's convictions; the Court remanded the case to us to address his remaining appellate issues. *Wingate*, 155 Wn.2d at 823-24. Rejecting Wingate's ineffective assistance of trial counsel claim, we affirmed his convictions and remanded to the trial court for reconsideration of his exceptional downward sentences and for possible resentencing. *State v. Wingate*, noted at 133 Wn. App. 1027. The Supreme Court denied Wingate's petition for review. On May 8, 2007, we issued a mandate terminating review.

## III. REMAND; INTERIM SECOND APPEAL

At the hearing on remand, Wingate moved the trial court to treat his sentencing enhancements as "deadly weapon," rather than "firearm," enhancements. Clerk's Papers (CP) at 188. The trial court found that there was no evidence of any other weapon used during the commission of the crimes, and it denied this motion. The trial court considered our decision in *Wingate*, noted at 133 Wn. App. 1027, and left intact Wingate's previous exceptional sentences.

---

[2] Wingate did not include in his ineffective assistance of trial counsel claim that defense counsel had failed to request a lesser included jury instruction on unlawful display of a weapon. He later raised that argument for the first time in his CrR 7.8 motion to vacate, almost a year after we remanded his case to the trial court following his first appeal. *Wingate*, noted at 133 Wn. App. 1027; Clerk's Papers (CP) at 258.

Wingate appealed the trial court's denial of his sentencing motion; we affirmed. *State v. Wingate*, noted at 148 Wn. App. 108 (2009), *review denied*, 169 Wn.2d 1007 (2010). On July 20, 2010, we again issued a mandate terminating review.

### IV. CrR 7.8 COLLATERAL ATTACK; THIRD APPEAL

Back in the trial court almost a year later, on June 10, 2011, Wingate moved under CrR 7.8 to vacate his two second degree assault convictions and firearm sentencing enhancements. He argued in the alternative that (1) his trial counsel had rendered ineffective assistance in failing to request a lesser included offense jury instruction for unlawful display of a weapon, or (2) his appellate counsel had rendered ineffective assistance in failing to raise this error in Wingate's first appeal. The State argued that Wingate's CrR 7.8 motion was untimely and moved to transfer it to the court of appeals for treatment as a personal restraint petition (PRP).

The trial court denied the State's motion to transfer, ruled that Wingate's CrR 7.8 motion was timely, and addressed its merits. The trial court concluded that (1) the motion was timely because it was filed within one year of our July 20, 2010 mandate terminating review; (2) our earlier May 8, 2007 mandate following Wingate's first appeal was not the date that triggered the CrR 7.8 one-year time limit; (3) Wingate had received effective representation at trial; (4) there was insufficient evidence to warrant a jury instruction on unlawful display of a weapon as a lesser included offense; and (5) even if Wingate's trial counsel had requested such an instruction, the trial court would have denied it. The trial court did not address Wingate's alternative ineffective assistance of appellate counsel argument.

Wingate now appeals the trial court's denial of his CrR 7.8 motion. The State cross-appeals the trial court's ruling that Wingate's CrR 7.8 motion was timely and its denial of the

State's motion to transfer the motion to our court for treatment as a PRP. After the parties filed their briefs in the instant appeal, our Supreme Court issued *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 280 P.3d 1102 (2012). We requested supplemental briefing on the effect, if any, of *Crace* on the issues pending in the instant appeal. We received the parties' supplemental briefs in January 2013.

## ANALYSIS

### I. STATE'S CROSS APPEAL: TIMELINESS OF CrR 7.8 MOTION COLLATERAL ATTACK

The State argues that the trial court erred in (1) concluding that Wingate's CrR 7.8 motion was timely, and (2) denying the State's motion to transfer Wingate's CrR 7.8 motion to the court of appeals for treatment as a PRP. We disagree.

### A. Standard of Review

We review a trial court's timeliness determination and a CrR 7.8 ruling for abuse of discretion. *State v. Perala*, 132 Wn. App. 98, 111, 130 P.3d 852, *review denied*, 158 Wn.2d 1018 (2006) (citing *Kreidler v. Eikenberry*, 111 Wn.2d 828, 832, 766 P.2d 438 (1989)). A trial court abuses its discretion when it exercises its discretion in a manner that is manifestly unreasonable or based on untenable grounds. *State v. Quismundo*, 164 Wn.2d 499, 504, 192 P.3d 342 (2008).

### B. Timeliness

A criminal defendant may collaterally attack[3] his judgment and sentence within one year

---

[3] "Collateral attack" means any form of postconviction relief other than a direct appeal. The term includes, but is not limited to, a personal restraint petition, a habeas corpus petition, a motion to vacate judgment, a motion to withdraw guilty plea, a motion for a new trial, and a motion to arrest judgment. RCW 10.73.090(2).

of its becoming final. *In re Pers. Restraint of Skylstad*, 160 Wn.2d 944, 947-48, 162 P.3d 413 (2007). RCW 10.73.090 provides:

> (1) No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed *more than one year after the judgment becomes final* if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.
> [. . . .]
> (3) For the purposes of this section, *a judgment becomes final on the last of the following dates*:
> (a) The date it is filed with the clerk of the trial court;
> (b) *The date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction*; or
> (c) The date that the United States Supreme Court denies a timely petition for certiorari to review a decision affirming the conviction on direct appeal.

(Emphasis added). In short, a judgment becomes final when review of both the conviction and the sentence is terminated, i.e., when all litigation on the merits ends. *Skylstad*, 160 Wn.2d at 948-49. In a criminal proceeding, a final judgment "'ends the litigation, leaving nothing for the court to do but execute the judgment'"; if the trial court still has to determine a sentence, however, then there *is* something more for the court to do than simply to execute the judgment. *Skylstad*, 160 Wn.2d at 949 (internal quotation marks omitted) (quoting *State v. Taylor*, 150 Wn.2d 599, 601-02, 80 P.3d 605 (2003)).

The State argues that because the trial court refused to alter Wingate's original exceptional sentence following our remand for "'possible resentencing,'" his original sentence became final once the original mandate issued on May 8, 2007, despite that the remand hearing had yet to occur. Br. of Resp't at 11 (quoting CP at 177). We disagree. A "'mandate disposing of a timely direct appeal from the conviction,'" "means the mandate that terminates review of both conviction and sentence—only then can the appeal be entirely disposed of." *Skylstad*, 160 Wn.2d at 953 (quoting RCW 10.73.090(3)(b)). We issued the May 8, 2007 mandate before the

trial court conducted the hearing on remand. Because there was a *possibility* of resentencing, this mandate did not terminate review of both Wingate's convictions and sentences.

### C. Denial of Transfer as PRP to Court of Appeals

CrR 7.8(c)(2) *requires* the trial court to transfer a CrR 7.8 motion to the Court of Appeals for consideration as a personal restraint petition *unless* the trial court determines that (1) RCW 10.73.090 does not bar the motion as untimely; and (2) either (a) the defendant has made a substantial showing that he is entitled to relief, or (b) resolution of the motion will require a factual hearing. We have already affirmed the trial court's ruling that Wingate timely filed his CrR 7.8 motion; thus, the trial court was justified in denying the State's motion under the first prong of the CrR 7.8(c)(2) transfer test.

But the record before us is silent with respect to the second prong of this CrR 7.8(c)(2) test: The record neither reflects an express trial court finding that Wingate had made a "substantial showing"[4] that he was entitled to relief[5] nor shows that the trial court conducted a factual hearing on remand. The record does show, however, that the trial court conducted a remand hearing[6] at which it addressed, and ultimately denied, Wingate's legal argument that his trial counsel had rendered ineffective assistance in failing to request a lesser included instruction.

___

[4] CrR 7.8(c)(2).

[5] The State does not argue this latter point as a reason for holding that the trial court abused its discretion in refusing to transfer Wingate's motion to the court of appeals as a PRP.

[6] At the remand hearing, the trial court stated:
> Here's what I think, . . . I think that I'm going to find it this way: I would like to reach the merits of this. I think that . . . there was no ineffective assistance of counsel. I will rule in favor of the defense with respect to the timeliness issue. That way *you both have something to appeal.* We will see what they have to say about that.

Verbatim Report of Proceedings (VRP) (Oct. 14, 2011) at 25 (emphasis added).

As our analysis below demonstrates, the record is sufficient to show that both prongs of the CrR 7.8(c)(2) test were met and, therefore, this rule did not require the trial court to transfer the case to us as a PRP. We hold, therefore, that the trial court did not abuse its discretion in denying the State's motion to transfer and in reaching the merits of Wingate's arguments.

## II. WINGATE'S DIRECT APPEAL; EFFECTIVE ASSISTANCE OF COUNSEL

Wingate argues that the trial court should have granted his CrR 7.8 motion to vacate his two second degree assault convictions because (1) his trial counsel was ineffective in failing to request a lesser included offense jury instruction on unlawful display of a weapon; or (2) in the alternative, his previous appellate counsel rendered ineffective assistance in failing to raise this ineffective assistance of trial counsel argument in his first appeal. These arguments fail. The State counters that, even if we reach the merits of Wingate's ineffective assistance claims, he "does not present a new claim for relief, but a reformulation of an old one that has previously been rejected by the court." Br. of Resp't at 26. Ultimately, we agree with the State.

### A. Standard of Review

Having already set forth the standard of review of a trial court's CrR 7.8 ruling, we add only that CrR 7.8(b)(5) allows us to grant relief from judgment for "'[a]ny other reason justifying relief from the operation of the judgment'" and that "'other reason'" here includes ineffective assistance of counsel. *State v. Martinez*, 161 Wn. App. 436, 440-441, 253 P.3d 445, (alteration in original) (quoting CrR 7.8(b)(5)), *review denied*, 172 Wn.2d 1011 (2011). A claim of ineffective assistance of counsel is a mixed question of fact and law, which we review de novo. *Martinez*, 161 Wn. App. at 441.

## B. New Grounds for Challenging Trial Counsel

The State is correct that a defendant may not raise an issue that he previously raised and that the appellate court rejected on direct appeal unless the interests of justice require relitigation of that issue. *In re Pers. Restraint of Lord,* 123 Wn.2d 296, 303, 868 P.2d 835 (1994) (citing *In re Pers. Restraint of Taylor,* 105 Wn.2d 683, 688, 717 P.2d 755 (1986)). An issue is considered raised and rejected on direct appeal if the same ground was determined adversely in the appeal and the prior determination was on the merits. *In re Pers. Restraint of Davis,* 152 Wn.2d 647, 671 n.14, 101 P.3d 1 (2004) (citing *Taylor,* 105 Wn.2d at 687). But where "doubts arise in particular cases as to whether two grounds are different or the same, they should be resolved in favor of the [defendant]." *Taylor,* 105 Wn.2d at 688. "[G]round" means a distinct legal basis for granting relief. *Taylor,* 105 Wn.2d at 688.

In Wingate's first appeal, he claimed ineffective assistance of trial counsel based on counsel's failure to propose an "actual danger" jury instruction. *Wingate,* noted at 133 Wn. App. 1027, slip op. at 2. In the instant appeal, Wingate again claims ineffective assistance of trial counsel; this time, however, he bases his claim on trial counsel's failure to request a lesser included offense jury instruction for unlawful display of a weapon. We agree with the State that (1) Wingate appears to be attempting to raise an ineffective assistance of trial counsel claim a second time, based a second time on trial counsel's failure to request a jury instruction, albeit asserting a different omitted instruction this time; and (2) case law precludes reformulation of this claim, which we previously rejected, especially where, other than asserting ineffective assistance of his first appellate counsel, Wingate does not explain why he could not have included this newly asserted trial counsel failure as a basis for his ineffective assistance of trial

counsel claim in his first appeal. *See, e.g., Davis*, 152 Wn.2d at 671 n.14; *Lord*, 123 Wn.2d at 303.

Nevertheless, an issue may become appealable if, as here, the trial court exercised its independent judgment and ruled on a particular issue. *State v. Barberio*, 121 Wn.2d 48, 50, 846 P.2d 519 (1993) (citing RAP 2.5(c)(1)).[7] Here, the trial court exercised its discretion on remand when it addressed ineffective assistance of *trial* counsel based on Wingate's failure to request the lesser included instruction and ruled on his CrR 7.8 motion. Thus, it appears that the trial court's ruling is appealable under RAP 2.5(c)(1); accordingly, we address the legal basis for this ruling in the instant appeal, namely Wingate's ineffective assistance of counsel argument.[8]

## C. Effective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, trial or appellate, a defendant must show that (1) his counsel's representation was deficient, falling below an objective standard of reasonableness; and (2) the deficient performance prejudiced him. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009) (citing *State v. McFarland*, 127 Wn.2d 322, 334–35, 899 P.2d 1251 (1995) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984))). A petitioner's failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). Because Wingate cannot show that he was entitled to a lesser included instruction on display of a weapon, he fails to show that

---

[7] RAP 2.5(c)(1) provides: "If a trial court decision is otherwise properly before the appellate court, the appellate court may at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in an earlier review of the same case."

[8] We note, however, that the trial court did *not* rule on Wingate's ineffective assistance of *appellate* counsel claim; therefore, there is no trial court ruling on this issue for us to review. Ultimately, however, this lack of trial court ruling on this claim is of no consequence here.

previous trial and appellate counsel were deficient in performance or that such failure prejudiced him.

A defendant is entitled to an instruction on a lesser included offense if (1) each element of the lesser offense is necessarily included in the charged offense, and (2) the evidence in the case supports an inference that the defendant committed only the lesser crime. *State v. Gamble*, 168 Wn.2d 161, 181, 225 P.3d 973 (2010) (citing *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)). The facts of the instant case, however, do not rise to this level.

A person is guilty of second degree assault if he assaults another with a deadly weapon under circumstances not amounting to first degree assault; a "[d]eadly weapon" includes any "loaded or unloaded firearm." RCW 9A.36.021(1)(a),(c);[9] RCW 9A.04.110(6).[10] To convict a defendant of second degree assault, "the jury must find specific intent to create reasonable fear and apprehension of bodily injury." *State v. Ward*, 125 Wn. App. 243, 248, 104 P.3d 670 (2004) (citing *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995)), *abrogated on other grounds by State v. Grier*, 171 Wn.2d 17, 38, 246 P.3d 1260 (2011). A defendant's intent, however, may be inferred from pointing a gun, but not from its mere display. *Ward*, 125 Wn. App. at 248.

To convict a defendant of unlawful display of a weapon, the State must prove that the defendant

---

[9] The legislature amended RCW 9A.36.021 in the LAWS OF 2011, ch. 166, § 1; LAWS OF 2007, ch. 79 § 2; LAWS OF 2003, ch. 53 § 64; and LAWS OF 2001, 2nd Spec. Sess., ch. 12 § 355. These amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

[10] The legislature amended RCW 9A.04.110 in the LAWS OF 2011, ch. 336, § 350, ch. 166, § 2; LAWS OF 2007, ch. 79 § 3; and LAWS OF 2005, ch. 458 § 3. These amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

> . . . carr[ied], exhibit[ed], display[ed], or [drew] any firearm, dagger, sword, knife or other cutting or stabbing instrument, club, or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifest[ed] an intent to intimidate another or that warrant[ed] alarm for the safety of other persons.

RCW 9.41.270(1). Because all elements of unlawful display of a weapon are also necessary elements of second degree assault, unlawful display of a weapon is a lesser included offense of second degree assault. RCW 9.41.270(1); RCW 9A.36.021; *Ward*, 125 Wn. App. at 248; *see State v. Fowler*, 114 Wn.2d 59, 67, 785 P.2d 808 (1990), *overruled on other grounds by State v. Blair*, 117 Wn.2d 479, 486–87, 816 P.2d 718 (1991).

To justify a lesser included offense instruction for unlawful display of a weapon under the *Workman/Gamble* test, the evidence had to support an inference that Wingate displayed the firearm only without the intent to create reasonable fear or apprehension of bodily injury, i.e., that he committed only the lesser offense. *See Ward*, 125 Wn. App. at 248. Thus, a lesser included offense instruction is warranted only "'if the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater.'" *State v. Fernandez-Medina*, 141 Wn.2d 448, 456, 6 P.3d 1150 (2000) (quoting *State v. Warden*, 133 Wn.2d 559, 563, 947 P.2d 708 (1997)).

Wingate argues that the evidence supported an inference that he committed only the lesser offense because there was, at least to a small degree, potentially conflicting evidence based on one witness's testimony that she did not see him point the gun at anyone and because the State "seemed to use the words 'display' and 'point' interchangeably at times." Suppl. Br. of Appellant at 3 (quoting VRP at 528, 530). The mere existence of conflicting testimony, however, does not, by itself, create the necessary inference to satisfy the *Workman/Gamble* lesser

included instruction test; again, the evidence must show that the defendant committed *only* the lesser offense. *Gamble*, 168 Wn.2d at 181. Such is not the case here.

Wingate himself testified that he pointed a firearm at Park's friends, Feist and Scott, the victims of the second degree assault convictions, negating any potential inference from other witnesses' testimonies that he committed only the lesser offense of unlawful display of a weapon:

> [WINGATE]: I went to where the trunk was, where [Park's] friends were, basically. When I was watching him, they were guarding the car, that's what they were doing. And I did not pull my firearm out until I was right upon them, so if they were armed, they will not be able to pull theirs out. And then after I was upon them and pulled mine out, told them to back up, I went and took the shotgun out the trunk, and the trunk was still open.
> [. . .]
> [Defense Counsel]: Once they backed up and you received the shotgun, did you put your gun down or was it still up? Do you recall?
> [WINGATE]: Yes, I pointed it down.
> [. . .]
> [WINGATE]: [T]hen [Park] started trying to get me to fight him. I said I won't fight him, you guys need to go home, and that's when [Feist], who was right behind the trunk, I saw like movement on the right side and he was pulling out a gun. And this is the only time I threatened him. I said, *"You better drop that gun or I'm going to shoot." And that's the only time I threatened them*, and he put it in the trunk.

VRP (Dec. 3, 2001) at 516, 518, 519.

Despite Wingate's assertion that the prosecutor used the terms "display" and "point" interchangeably, Wingate provided clear testimony on cross-examination that he did point the gun at the victims of the underlying second degree assault convictions:

> [THE STATE]: *[A]fter you pointed the gun at [Park]'s friends*, he then came over towards you, didn't he?
> [WINGATE]: Yes.
> [. . .]
> [THE STATE]: Mr. Wingate, you elevated things, didn't you?
> [WINGATE]: As in how?

[THE STATE]: *Nobody was pointing a gun at anybody until you did it.*

[WINGATE]: *Yeah, so I could get the shotgun.*

[THE STATE]: The shotgun was not involved in this altercation or this dispute at all at the time you pointed your gun at his friends and took it?

[WINGATE]: See, that's why I thought they should just leave.

[THE STATE]: You elevated the situation by *taking a gun and pointing it at somebody.* This shotgun had never been pointed at anybody, right?

[WINGATE]: Yes.

[THE STATE]: And you are the one that elevated the situation *by pointing a live, armed gun at people there.*

[WINGATE]: *Yes.*

[. . .]

[THE STATE]: . . . Stephen Park is chasing James Koo around the truck here. You go over and disarm—or take the shotgun from the trunk of Joseph Feist's car.

[WINGATE]: Yes.

[THE STATE]: It appears to you that Stephen Park sees you because he walks over *as you have your gun pointed at his friends. Correct?*

[WINGATE]: *Yes.*

[THE STATE]: *Have I gotten anything wrong there?*

[WINGATE]: *No.*

VRP (Dec. 3, 2001) at 530, 534-36 (emphasis added). In testifying that he pointed the gun at people, Wingate admitted that he did not commit only the lesser-included weapon-display offense.

Nevertheless, Wingate argues that, despite having testified that he pointed a firearm at the second degree assault victims, he was entitled to a lesser included offense instruction because there was sufficient evidence "to create an 'inference'" that his mental state was "the less culpable, 'intent to intimidate' or cause 'alarm.'" Br. of Appellant at 17. He is incorrect. The test is not whether the evidence created a mere inference; again, it is whether the evidence created an inference that he committed *only* the lesser crime. *Gamble*, 168 Wn.2d at 181. Wingate's testimony that he pointed the gun at the victims precluded any inference that he committed only the lesser offense of unlawful display of a weapon.

15

Our Supreme Court recently addressed, and rejected, a similar argument in *Crace*, reiterating its *Grier*[11] caveat about deference to trial counsel's strategy in matters of requesting, or not requesting, lesser included offense instructions:

> . . . With respect to prejudice, we noted in *Grier* that the court must assume "that the jury would not have convicted [the defendant] unless the State had met its burden of proof." 171 Wn.2d at 43–44. And, we must assume that "the availability of a compromise verdict would not have changed the outcome of [the] trial." *Id.* at 44 (quoting *Strickland*'s admonishment that "'a court should presume . . . that the judge or jury acted according to the law,'" (alteration in original) 466 U.S. at 694).
>
> Assuming without deciding that counsel was deficient, consistent with *Grier*, we cannot say in all reasonable probability that counsel's error—failure to seek the lesser included offense—contributed to Crace's conviction on attempted second degree assault. There was sufficient evidence from which a juror could conclude Crace committed this offense. [. . .] Indeed, if failing to request the lesser-included instruction was deficient performance, it occurred during an otherwise strategic and tactically driven presentation by counsel. In light of the presumptions we recognized in *Grier*, it would be difficult to show prejudice in such a context, and Crace has failed to do so here.

*In re Crace*, 174 Wn.2d at 847-48 (some alterations in original).[12]

Similarly here, Wingate's ineffective assistance of trial and appellate counsel claims fail. At the remand hearing, the trial court noted that it would not have given this lesser included offense instruction even if Wingate's defense counsel had requested it at trial; and we agree with the trial court that the evidence did not warrant such instruction. Thus, Wingate failed to show

---

[11] *Grier*, 171 Wn.2d 38.

[12] In his supplemental brief, Wingate argues that strict application of *Crace* would mean that a defendant's failure to request a lesser included offense instruction could never constitute ineffective assistance because (1) "if there was sufficient evidence to convict[,] and we presume the jury followed instructions, it would be impossible to show prejudice"; and (2) such a reading conflicts with the U.S. Supreme Court's decision in *Keeble v. United States*, 412 U.S. 205, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973). Suppl. Br. of Appellant at 7. We need not reach this issue here because Wingate fails to show that the evidence entitled him to the lesser included instruction.

No. 42857-1-II

both deficient performance of trial counsel and prejudice. Accordingly, we hold that the trial court did not abuse its discretion in denying Wingate's CrR 7.8 motion to vacate on this ground.

We further note that, although the trial court on remand did not rule on Wingate's claim of ineffective assistance of appellate counsel in his first appeal, that claim is predicated on Wingate's failed claims that his trial counsel rendered ineffective assistance. Because Wingate cannot show both prongs of the ineffective assistance of counsel test—deficient performance and prejudice, his ineffective assistance of appellate counsel argument also fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Johanson, A.C.J.

Bjorgen, J.

17