FILED
COURT OF APPEALS
DIVISION II

2013 MAY 21 AM 10: 10

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42577-7-II |
| Respondent, | |
| v. | |
| NICHOLAS MICHAEL RICKMAN, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Nicholas Michael Rickman appeals his conviction for first degree assault with a deadly weapon. He claims that the trial court violated his right to a public trial and the public's right to open court records by sealing jury questionnaires without a *Bone-Club*[1] analysis, and that his trial counsel provided ineffective assistance by failing to ask for a lesser included instruction of second degree assault. Because sealing juror questionnaires does not constitute a courtroom closure impinging Rickman's public trial rights under the facts here, and because Rickman failed to demonstrate trial counsel's deficient performance, we affirm.

## FACTS

On April 7, 2009, Rickman, Jacob Diaz, Alex Leslie, and Daniel Cedarland left a Tacoma bar intoxicated, and Diaz drove the group back to Gig Harbor. On the way home, Rickman and Diaz began arguing. Diaz pulled over and unsuccessfully attempted to expel Rickman from the

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

car. After Diaz resumed driving, he and Rickman continued to argue. Diaz, who was getting angrier, told Rickman that he would "kick his ass" and "fuck him up." 9 Verbatim Report of Proceedings (VRP) at 1418; 6A VRP at 776. Diaz parked in Rickman's driveway, and both exited and met at the front of the car. The short confrontation ended when Rickman stabbed Diaz four times with a knife, inflicting life-threatening injuries. The trauma surgeon who operated on Diaz testified that Diaz nearly died from his injuries.

The State charged Rickman with attempted first degree murder[2] with a deadly weapon.[3] Later, the State amended the information to add a charge for first degree assault[4] with a deadly weapon.[5] At trial, potential jurors filled out juror questionnaires. While discussing the use of jury questionnaires, the trial court reminded the parties that the courts do not seal the questionnaires without a hearing. The record indicates that the parties were given copies of the completed questionnaires. Prior to the oral portion of voir dire, the parties and the trial court used the questionnaires to determine which jurors to question separately. The jury questionnaires were sealed the same day voir dire concluded.[6]

The record indicates that the courtroom was open during voir dire, because before voir dire resumed on June 8, 2011, the trial court made a comment to the "viewing public" that while

---

[2] RCW 9A.32.030(1)(a); 9A.28.020(1).

[3] RCW 9.94A.825.

[4] RCW 9A.36.011(1)(c).

[5] RCW 9.94A.825.

[6] The record does not indicate that the trial court ordered the jury questionnaires sealed; however, they were filed under seal on June 8, 2011. The record indicates that voir dire concluded on the morning of June 8, 2011.

they were "more than welcome [to] remain," they needed "to stay pretty much where" they were already sitting. 1 VRP at 137. Later in the afternoon, the trial court addressed "all of you" and stated, "[S]eating is much more accessible this afternoon now that the jury has been selected." 1 VRP at 163. The court also reminded the public to turn off phones and refrain from talking.

Leslie testified that after the group left the bar in Diaz's car, Rickman started poking and nudging Diaz. Leslie testified that, in response to the poking, Diaz appeared "enraged" and told Rickman, "I am going to kick your ass when we get to your house." 4 VRP at 490, 526. Cedarland testified that Rickman teased Diaz and they bickered all the way home. Diaz stated that he was going to kick Rickman's ass, and Rickman responded indifferently, "We'll see." 6A VRP at 776.

Diaz testified that he planned to confront Rickman when they arrived at Rickman's residence, but Diaz only intended to deliver a "simple butt whooping." 9 VRP at 1334. Diaz explained that when they met at the front of the car, Rickman immediately stabbed him with no warning.

Rickman did not deny stabbing Diaz, but claimed that it was in self-defense. Rickman testified that Diaz immediately threw Rickman on the hood of the car and severely beat him to the point that Rickman feared for his life. Rickman also asserted that he knew Diaz "carrie[d] out his threats" because he was aware that Diaz had threatened and assaulted another individual on a previous occasion. 10 VRP at 1513. Rickman stated that he punched Diaz several times on Diaz's side, and it was not until he saw Diaz bleeding that Rickman realized he had stabbed Diaz. Rickman stated that while he knew he had his keys and knife in hand, he did not remember opening or using the knife. He also stated that he yelled for someone to call 911, and

ran into his house for bandages. Rickman testified that he usually carries a knife and does not know where the knife used in the stabbing is.

The jury acquitted Rickman of attempted first degree murder and convicted him of first degree assault with a deadly weapon. Rickman timely appeals.

## ANALYSIS

### I. RIGHT TO PUBLIC TRIAL

Rickman argues that the trial court violated his right to a public trial by sealing the jury questionnaires without conducting a *Bone-Club* analysis. We disagree because sealing the jury questionnaires here did not constitute a courtroom closure violating Rickman's public trial rights.

### A. Standards of Review and Rules of Law

Whether a violation of the public trial right exists is a question of law we review de novo. *State v. Slert*, 169 Wn. App. 766, 771-72, 282 P.3d 101 (2012), *petition for review granted in part*, No. 87844-7 (Wash. April 8, 2013). State and federal constitutions guarantee the right to a public trial. *See* U.S. CONST. amend. VI; WASH. CONST. art. I, section 22. Before a trial court can close the courtroom to the public, it must engage in a five-factor *Bone-Club* analysis in order to determine if closure is appropriate. *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). But sealing juror questionnaires does not require a *Bone-Club* analysis when the questionnaires are used as screening tools, the oral portion of voir dire occurs in open court, and the public has the opportunity to observe the proceedings. *State v. Beskurt*, 176 Wn.2d 441, 447, 293 P.3d 1159 (2013).

B. Analysis

*Beskurt* controls our analysis. Here, the parties agreed to use jury questionnaires to identify which jurors to individually question in open court outside the presence of other venire members. While the questionnaires were sealed on the same day as the conclusion of voir dire, as in *Beskurt*, everything else "that was required to be done in open court was done." *Beskurt*, 176 Wn.2d at 447-48. Though voir dire was not transcribed, the record indicates that the courtroom was open. Therefore, as in *Beskurt*, the sealing of juror questionnaires did not constitute a courtroom closure, no *Bone-Club* analysis was necessary, and the trial court did not infringe Rickman's article I, section 22 rights to a public trial.

II. RIGHT TO OPEN COURT RECORDS

Rickman also argues that the trial court violated the public's right to open court records under article I, section 10 of the Washington Constitution by sealing the juror questionnaires and therefore, he is entitled to a new trial. Again, we disagree.

When an appellant seeks a new trial to remedy an alleged violation of the public's article I, section 10 rights to open records—without also demonstrating an article I, section 22 violation—the alleged error does not warrant a retrial. *Beskurt*, 176 Wn.2d at 445, 458-59. Thus, even if there were a violation of the public's right to open court records, Rickman is not entitled to a new trial because he failed to demonstrate a violation of his article I, section 22 rights. *See Beskurt*, 176 Wn.2d at 445, 458-59. Therefore, Rickman cannot demonstrate reversible error necessitating a new trial.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Rickman argues that he was entitled to a lesser included second degree assault instruction because the evidence shows that he did not stab Diaz with intent to cause great bodily harm. He claims that failure to seek such an instruction was objectively unreasonable because (1) it precluded the jurors from considering a "less drastic alternative" to the charged crimes; (2) requesting the instruction would not have interfered with Rickman's self-defense claim; and (3) the disparity between the penalties for first degree assault (93 to 123 months) and second degree assault (3 to 9 months) is so significant.[7] Even if Rickman was entitled to a lesser included instruction, defense counsel did not provide ineffective assistance because defense counsel reasonably pursued an all-or-nothing trial strategy.

To succeed on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's conduct was deficient; and (2) the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel is presumed to have acted competently unless shown otherwise. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). In order to show prejudice, the defendant must demonstrate that it is reasonably probable that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If the ineffective assistance claim fails on one prong, we "need not address the other." *State v. Staten*, 60 Wn. App. 163, 171, 802 P.2d 1384 (1991), *review denied*, 117 Wn.2d 1011 (1991). Performance is not deficient when

---

[7] Rickman cites to this court's *State v. Grier*, 150 Wn. App. 619, 208 P.3d 1221 (2009), *vacated*, *State v. Grier*, 171 Wn.2d 17, 246 P.3d 1260 (2011), *adhered to in part on remand*, 168 Wn. App. 635, 278 P.3d 225 (2012), to support this claim. Our Supreme Court, however, overturned that decision. *Grier*, 171 Wn.2d 17.

counsel's conduct can be characterized as legitimate trial strategy or tactics. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011), *adhered to in part on remand*, 168 Wn. App. 635, 278 P.3d 225 (2012).

Counsel's failure to propose a lesser included instruction could be considered part of counsel's legitimate trial strategy. *See Grier*, 171 Wn.2d at 43. Further, when counsel pursues an all-or-nothing strategy by not requesting lesser included instructions, he does not necessarily provide ineffective assistance because the defendant has more to lose if he is convicted, but more to gain if acquitted. *Grier*, 171 Wn.2d at 39. Trial counsel's failure to request a lesser included instruction may, however, constitute ineffective assistance if the failure was objectively unreasonable. *State v. Hassan*, 151 Wn. App. 209, 218-219, 211 P.3d 441 (2009). The defendant can rebut the presumption of effective assistance where there is no conceivable legitimate tactic explaining counsel's performance. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

In *Grier*, the defendant claimed self-defense as one of her defense theories for a shooting that resulted from a fight. 171 Wn.2d at 42-43. Our Supreme Court held that acquittal was a real possibility for her self-defense claim, "albeit a remote one," because the victim took both of Grier's guns, pointed a gun at Grier's son earlier that evening, and had a history of gang involvement and violent tendencies about which Grier knew. *Grier*, 171 Wn.2d at 43. Also, the victim had earlier assaulted her son, splitting her son's lip. *Grier*, 171 Wn.2d at 43. At trial, defense counsel had proposed lesser included instructions for first and second degree manslaughter, but later withdrew them with Grier's assent. *Grier*, 171 Wn.2d at 26-27. The

court determined that under these facts, though risky, "an all or nothing approach was at least conceivably a legitimate strategy to secure an acquittal." *Grier*, 171 Wn.2d at 42.

### A. Less Drastic Alternative

Rickman claims that failure to seek a lesser included instruction was objectively unreasonable because it precluded the jurors from considering a "less drastic alternative" to the charged crimes. Br. of Appellant at 14. Even assuming without deciding that Rickman was entitled to a second degree assault instruction, defense counsel's failure to request the lesser included instruction did not constitute deficient performance because defense counsel could have been pursuing a legitimate all-or-nothing trial strategy.

Defense counsel does not deficiently perform simply by not requesting a lesser included instruction on a client's behalf every time the client is entitled to one. *See Grier*, 171 Wn.2d at 42. The question is not whether the defendant is entitled to an instruction, but rather, whether defense counsel was ineffective in forgoing such instructions. *Grier*, 171 Wn.2d at 42.

It is plausible that defense counsel did not request the instruction because his strategy was to pursue an acquittal, not a lesser conviction. The record and case law support such a strategy. For example, the victim in *Grier* threatened Grier's son by threatening him with a gun, and here, Diaz verbally threatened Rickman multiple times. 171 Wn.2d at 21. The victim in *Grier* assaulted Grier's son, and here, Diaz attempted to physically expel Rickman from the car. 171 Wn.2d at 22. Grier knew that the victim was involved in a gang and had violent tendencies, *Grier*, 171 Wn.2d at 28; here, Rickman knew that Diaz had violent tendencies because Diaz previously threatened and assaulted another individual.. Rickman also claimed to have feared for his life when Diaz was beating him. Therefore, Rickman's self-defense claim is as feasible

as that in *Grier*, in which the court determined that counsel's failure to pursue a lesser included instruction was part of a legitimate trial strategy to achieve outright acquittal. Accordingly, defense counsel's failure to request a lesser included instruction did not constitute deficient performance.

### B. Applicability of Self-Defense Claim

Rickman argues that because his self-defense claim would have been applicable to both first and second degree assault, his defense counsel's failure to request the lesser included instruction was deficient. This is incorrect.

While Rickman does not cite authority for his reliance on this particular factor, he appears to have derived it from *State v. Ward*, 125 Wn. App. 243, 249, 104 P.3d 670 (2004), *abrogated by Grier*, 171 Wn.2d 17. In *Ward*, Division One of this Court considered: (1) the difference between penalties for the greater and lesser offenses; (2) whether the defendant's defense was applicable to both the greater and lesser offenses; and (3) whether self-defense as an all-or-nothing approach was reasonable. 125 Wn. App. at 249-50. But our Supreme Court abrogated *Ward* in *Grier*, stating that *Ward*'s multi-factor test that Rickman advances here "tip[s] the scales in favor of deficient performance" and "distorts the *Strickland* standard." *Grier*, 171 Wn.2d at 38. Therefore, Rickman's argument, which relies on the *Ward* factors, is misplaced.

### C. Disparity in Punishment

Rickman also argues that counsel's failure to seek a lesser included instruction was objectively unreasonable because Rickman's self-defense claim applied to both first degree and second degree assault, and the difference in punishment between first degree and second degree

assault is "extreme." Br. of Appellant at 16. Again, he appears to incorrectly rely on another of the *Ward* factors.

As discussed above, our Supreme Court determined that the disparity in penalties between greater and lesser offenses does not automatically render deficient a defense counsel's failure to request a lesser included instruction. *Grier*, 171 Wn.2d at 39. Specifically, the court noted that lesser offenses always carry lighter sentences and thus unfairly tipped the scales in favor of deficient performance. *Grier*, 171 Wn.2d at 38-39. Because our Supreme Court has invalidated this theory, Rickman does not demonstrate that defense counsel's failure to seek a lesser included instruction constituted deficient performance.

Under *Grier*, Rickman fails to demonstrate that defense counsel provided deficient performance. Because Rickman's ineffective assistance claim fails under the deficient performance prong of *Strickland*, we do not need to reach the prejudice prong.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.

We concur:

Hunt, J.

Quinn-Brintnall, J.

10