211 P.3d 441 (2009)
STATE of Washington, Respondent,
v.
Rashid Ali HASSAN, Appellant.
No. 61756-7-I.
Court of Appeals of Washington, Division 1.
July 13, 2009.
*442 Eric J. Nielsen, Nielsen Broman & Koch PLLC, Seattle, WA, Appellant.
Daniel Kalish, King County Prosecutor's Office, Seattle, WA, for Respondent.
SCHINDLER, C.J.
¶ 1 Rashid Ali Hassan appeals his conviction of possession of marijuana with intent to deliver. Relying on our decision in State v. Ward, 125 Wash.App. 243, 104 P.3d 670 (2004), Hassan asserts that his attorney provided ineffective assistance of counsel by pursuing an all or nothing strategy and failing to request a lesser included instruction. There is a strong presumption that counsel provided competent representation. In order to establish deficient performance, Hassan must show there were no legitimate or strategic reasons for the challenged conduct. Because the decision to seek an acquittal instead of requesting a jury instruction on the lesser included offense can be characterized as legitimate trial strategy, we reject Hassan's claim of ineffective assistance of counsel and affirm the jury conviction.

FACTS
¶ 2 On August 14, 2007, former Seattle Police Officer Thomas Burns was on bicycle patrol in the Pike Place Market area near Victor Steinbruck Park. Rashid Ali Hassan was sitting on a park bench. A backpack was on the ground next to him. Officer *443 Burns watched as Hassan engaged in three separate drug transactions.
¶ 3 In the first transaction, after a man sat down next to Hassan and "showed him money," Hassan reached into the backpack and pulled out "a small, yellow baggy." Hassan gave the man the baggie in exchange for the money. Officer Burns said that Hassan then put the money in the backpack.
¶ 4 In the next transaction, as a woman approached Hassan, he reached into the backpack and showed her another small, yellow baggie. The woman gave Hassan money in exchange for the baggie, and Hassan put the money in the backpack.
¶ 5 When another woman approached Hassan and gave him money for a small, yellow baggie, Officer Burns called for assistance in arresting Hassan for delivery of marijuana. Officer Burns also described the woman from the last transaction and asked the officers to try to locate her.
¶ 6 In a search incident to arrest, Officer Burns found two small plastic baggies in Hassan's pocket. Each of the baggies had a yellow sticker on it with a "Batman" logo. Officer Burns found more than 40 small plastic baggies of marijuana with "Batman" stickers in the backpack and a large amount of cash, "`just kind of wadded up.'"
¶ 7 After placing Hassan under arrest, Officer Burns talked to the woman involved in the last transaction with Hassan. The woman identified herself as Erica Lunedorf and agreed to give Officer Burns the baggie of marijuana with a "Batman" stickers that she purchased from Hassan.
¶ 8 The Washington State Crime Laboratory (WSCL) tested the contents of the two baggies seized from Hassan, the baggies in the backpack, and the baggie Lunedorf purchased from Hassan. The WSCL confirmed that the baggies contained marijuana. The State charged Hassan with one count of possession of marijuana with intent to deliver in violation of RCW 69.50.401(1), (2)(c).
¶ 9 At trial, the parties stipulated that the baggies seized from Hassan, the baggies in the backpack, and the baggie returned by Lunedorf were tested by the WSCL and contained marijuana. Officer Burns and Detective David Doucett testified on behalf of the State at trial. Officer Burns testified that after 18 years, he had left the Seattle Police Department and now worked as a sales director. Officer Burns was the only witness who testified about the drug transactions. Detective Doucett identified the contents of the backpack, including a jacket and court documents with Hassan's name. Detective Doucett testified that the court documents were located in the middle section of the backpack in "`a pocket within a compartment.'"
¶ 10 Hassan and his friend Mohamed Hassan[1] testified on behalf of the defense. Hassan testified that he went to the park that day with his friend Mohamed. Hassan admitted that he purchased two baggies of marijuana at the park for $20 from an acquaintance named Mo. Hassan denied that the backpack was his and denied selling marijuana. Hassan testified that the backpack belonged to Mo. Hassan said that when he asked Mo for a cigarette, Mo told him to go ahead and get one out of the backpack. Hassan said he then reached into Mo's backpack to get a cigarette. Mo told Hassan he was going to the bathroom and would be right back. Hassan said Officer Burns arrested him very shortly after Mo left.
¶ 11 Hassan admitted that the jacket and the court documents in the backpack belonged to him. Hassan testified that he had the court papers in his back pocket when Officer Burns arrested him. According to Hassan, Officer Burns put Hassan's jacket and the folded up court papers into the backpack.
¶ 12 Immediately following Hassan's testimony, the trial court asked whether the defense planned to submit any supplemental jury instructions, "[I]s the defense proposing any supplemental instructions at this point....?" In response, Hassan's attorney informed the court that the defense did not *444 intend to submit any supplemental jury instructions.
¶ 13 Thereafter, Mohamed testified. Mohamed said that he was with Hassan at the park that day and sat next to him the entire time. Mohamed testified that a man named Mo was also at the park. Mohamed said Mo had a backpack with him and that when Hassan asked Mo for a cigarette, Mo told him to take one out of his backpack. Mohamed saw Hassan get a cigarette out of the cigarette pack from Mo's backpack, put the cigarette pack back into a zipped section of the backpack, and place the backpack on the ground next to him. Mohamed said that Mo said he was going to the bathroom and would be right back. Mohamed testified that the police arrested Hassan about five minutes after Mo left. Mohamed said Hassan did not sell any marijuana, and he did not see Hassan buy any marijuana.
¶ 14 Hassan's attorney did not request an instruction on the lesser included offense of possession of marijuana. The court instructed the jury on the crime of possession of a controlled substance with the intent to deliver and actual or constructive possession.
¶ 15 In closing argument, the State relied on the testimony of Officer Burns and the court documents found in the backpack to argue that Hassan possessed the drugs in the backpack that he sold that day in the three separate drug transactions.
¶ 16 The defense argued that the jury should acquit because the State did not prove beyond a reasonable doubt that Hassan possessed marijuana with the intent to deliver, emphasizing the lack of corroboration for the State's case. The attorney asserted that Hassan's testimony that the backpack was not his was more credible than Officer Burns because Hassan's testimony was corroborated by Mohamed and the evidence at trial. The defense attorney also explained why Mohamed's testimony was more credible than Officer Burns.
Two people that have different perspectives on what happened on the day of the arrest. Mohamed Hassan doesn't have a recollection of Rashid having bought any marijuana. Well, whywhy would he have a recollection of that? Does he really have a recollection of Rashid never having left his side?
Maybe you can think back about the last time you went down to the Market with someone, say a year ago, seven months ago, two weeks ago. Would you be able to remember if, in the crowds down there, if you were always together? Or would you think back and think, well, yeah, I don't remember us not being together; therefore, we were always together. That [is] really how memory works.
And that's really how truthful, credible testimony comes out. When two people are together and theythey witnessing the same event, inevitably they're going to see different things. If they don't, that's fishy.
Someone who's charged with a crime doesn't get to choose what crime they're charged with. So we have an admission to a crime; it's illegal to possess marijuana. And so what we're arguing about is whether or not this person was selling marijuana out of this bag down at the Market. That's what we're arguing about.
And you've got a former police officer who testifies with great certainty, with zero corroboration of any of it; and you have two people who say, No, that's not what happened. Another person-this bag belongs to another person.
There were other police officers there. Maybe they didn't have anything to say that would corroborate anything either, what Mr. Burns has to say?
¶ 17 In addition, the attorney noted that the condition of the court papers was far more consistent with Hassan's testimony that he carried the court papers in his back pocket and Officer Burns put the papers in the backpack. The attorney also pointed out that the backpack did not contain the cigarette pack or the money from the alleged drug transactions. Hassan's attorney also argued that the State did not present the testimony of any of the individuals who allegedly purchased marijuana, including the woman Officer Burns identified as being involved in the last transaction.
*445 ¶ 18 The jury convicted Hassan of possession of marijuana with intent to deliver. With five prior convictions for possession of marijuana with intent to deliver, Hassan's standard range sentence was 6+ to 18 months.[2] The court sentenced Hassan to 9 months in the King County Work Education Release Program.

ANALYSIS
¶ 19 On appeal, Hassan claims that his attorney provided ineffective assistance of counsel by not requesting a jury instruction on the lesser included offense of simple possession for the charge of possession of marijuana with intent to deliver. Relying on our decision in Ward, Hassan asserts that there were no legitimate strategic or tactical reasons to not request the lesser included instruction of possession and that he was prejudiced because the jury was not given the option of finding him guilty of the lesser included offense. The State concedes that if requested, the lesser included instruction for simple possession would have been given.[3] However, the State contends that the decision to not ask for the lesser included offense instruction was a legitimate trial strategy. We agree.
¶ 20 The purpose of the effective assistance of counsel guarantee of the Sixth Amendment is to ensure that a criminal defendant receives a fair trial. Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, Hassan must demonstrate (1) deficient performance, that his attorney's representation fell below the standard of reasonableness, and (2) resulting prejudice, that but for the deficient performance, the result would have been different. Strickland, 466 U.S. at 687, 104 S.Ct. 2052; State v. Bowerman, 115 Wash.2d 794, 808, 802 P.2d 116 (1990) (adopting the standards in Strickland). If a defendant fails to establish either prong, we need not inquire further. State v. Hendrickson, 129 Wash.2d 61, 78, 917 P.2d 563 (1996).[4]
¶ 21 To establish deficient performance, Hassan has the heavy burden of showing that his attorney "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. There is a strong presumption of effective representation of counsel, and the defendant has the burden to show that based on the record, there are no legitimate strategic or tactical reasons for the challenged conduct. State v. McFarland, 127 Wash.2d 322, 335-36, 899 P.2d 1251 (1995). As the Supreme Court explained in Strickland:
Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action *446 `might be considered sound trial strategy.' See Michel v. Louisiana, supra, 350 U.S. at 101, 76 S.Ct. at 164.
Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
¶ 22 The decision to not request an instruction on a lesser included offense is not ineffective assistance of counsel if it can be characterized as part of a legitimate trial strategy to obtain an acquittal. State v. King, 24 Wash.App. 495, 501, 601 P.2d 982 (1979); State v. Hoffman, 116 Wash.2d 51, 804 P.2d 577 (1991).[5] In King, a prosecution for assault in the second degree, this court held that counsel was not deficient in failing to request a lesser included instruction on simple assault because "[i]t was an all-or-nothing tactic that well could have resulted in an outright acquittal." King, 24 Wash.App. at 501, 601 P.2d 982.
¶ 23 And in Hoffman, the Washington Supreme Court rejected the claim that the court erred in acquiescing to the defense request to not give lesser included instructions.
Had the jury decided (as the defendants strenuously argued) that the evidence did not prove the charges of murder in the first degree and assault in the first degree beyond a reasonable doubt, then under the instructions given, the defendants would have been acquitted. The defendants cannot have it both ways; having decided to follow one course at the trial, they cannot on appeal now change their course and complain that their gamble did not pay off. Defendants' decision to not have included offense instructions given was clearly a calculated defense trial tactic and, as we have held in analogous situations, it was not error for the trial court to not give instructions that the defendant objected to.
Hoffman, 116 Wash.2d at 112, 804 P.2d 577.
¶ 24 However in Ward, this court concluded that defense counsel's tactical decision to pursue an all or nothing approach and to not request a lesser included instruction was ineffective because the decision was objectively unreasonable. In Ward, the defendant Ward was convicted of assault in the second degree for threatening two men with a gun. The two men were legitimately seeking to repossess Ward's car. Ward, 125 Wash.App. at 246, 104 P.3d 670. The two men testified that Ward pointed a gun at them. Ward denied pointing a gun at the men and testified that he acted in self defense because one of the men came toward him with a crowbar, and he believed they were attempting to steal his car. Ward said that he told the men that he had a gun, ordered them to leave, and showed them his gun by opening his jacket. Ward, 125 Wash.App. at 248, 104 P.3d 670. Ward's attorney did not request an instruction for the lesser included offense of unlawfully displaying a weapon.
¶ 25 On appeal, Ward asserted that his attorney provided ineffective assistance of counsel by not requesting the lesser included offense instruction. This court concluded that defense counsel's strategy was objectively unreasonable because it exposed Ward to an unreasonable risk of conviction. Ward, 125 Wash.App. at 250, 104 P.3d 670. In reaching this conclusion, the court considered (1) the significant disparity in the penalty between the greater and the lesser offense, (2) the fact that the defendant's theory of self defense applied to both of the offenses, and (3) the particularly risky nature of relying on Ward's significantly impeached testimony. But as the Ward decision makes clear, the determination of whether an all or nothing strategy is objectively unreasonable is a highly fact specific inquiry.
¶ 26 None of the three Ward factors is present in this case. The disparity in Ward between a sentence for assault in the second degree with a deadly weapon enhancement and a misdemeanor conviction for unlawful display of a weapon was 77 months. Here, *447 although there are significant differences between the consequences of a felony and a misdemeanor conviction, the sentence for possession of marijuana with intent to deliver is 6+ to 18 months, while the sentence for the lesser included misdemeanor of possession of less than 40 grams of marijuana is 3 months. RCW 69.50.4014; RCW 9.92.030.
¶ 27 Second, unlike in Ward, Hassan's defense did not apply to both the greater and the lesser included offense. In an apparent attempt to bolster his credibility in challenging Officer Burns' account, Hassan candidly admitted that he committed the lesser included offense of possessing two baggies of marijuana. However, Hassan testified that he did not sell the marijuana and he did not own or possess the backpack containing the other baggies of marijuana.
¶ 28 Hassan's testimony at trial also indicates he was aware of the risks of pursuing an all or nothing strategy in an effort to obtain an acquittal. In assessing the defense strategy and deciding to testify that he committed the lesser offense of possession, Hassan would have been aware of his right to request an instruction for that offense. And after Hassan testified, the trial court expressly asked the defense about supplemental jury instructions. The reasonableness of the defense strategy may be determined, or significantly influenced, by the defendant's statements or actions. Strickland, 466 U.S. at 691, 104 S.Ct. 2052. Where a lesser included offense instruction would weaken the defendant's claim of innocence, the failure to request a lesser included offense instruction is a reasonable strategy. Strickland, 466 U.S. at 691, 104 S.Ct. 2052.
¶ 29 Finally, unlike the defendant in Ward, Hassan's testimony was not severely impeached. In Ward, the defendant told the police that he knew the two men were there to repossess his car. But at trial, Ward testified that he believed the men were thieves. Here, there was no such contradiction. There is no dispute that when Hassan was arrested, he told Officer Burns that the backpack containing the marijuana was not his. There is also no dispute that Hassan had two baggies of marijuana in his pocket. At trial, Hassan admitted buying the two baggies of marijuana from Mo, but again insisted that the backpack was not his and that Officer Burns took the court papers from him and put them in the backpack. Mohamed's testimony corroborated Hassan's testimony. Mohamed also testified that the backpack belonged to Mo. In contrast, the State relied on the uncorroborated testimony of Officer Burns.
¶ 30 On this record, because the only chance for an acquittal was to not request a lesser included instruction, we conclude that the decision to pursue an all or nothing strategy was not objectively unreasonable. Because Hassan has not carried his burden establishing deficient performance, his claim of ineffective assistance of counsel fails, and we affirm his conviction.[6]
WE CONCUR: DWYER A.C.J., and APPELWICK, J.
NOTES
[1] Mohamed Hassan is unrelated to Rashid Hassan. For purposes of clarity, Mohamed Hassan is referred to as Mohamed.
[2] "6+" is six months plus one day. RCW 9.94A.517(1).
[3] Simple possession of a controlled substance is a lesser-included offense of the crime of possession with the intent to deliver. State v. Harris, 14 Wash.App. 414, 418, 542 P.2d 122 (1975). However, felony possession of marijuana in excess of 40 grams is not a lesser included offense of possession with intent to deliver. State v. Hutchins, 73 Wash.App. 211, 219, 868 P.2d 196 (1994).
[4] We note that to the extent that a defendant needs to rely on information outside the record in seeking to establish ineffective assistance of counsel, he must file a personal restraint petition. McFarland, 127 Wash.2d at 338, 899 P.2d 1251.
[5] Other jurisdictions have also concluded that an all or nothing approach is a legitimate trial strategy. See Adams v. Bertrand, 453 F.3d 428, 435-36 (7th Cir.2006) (strategy that might have lead to an acquittal is reasonable); Tinsley v. Million, 399 F.3d 796, 808 (6th Cir.2005) (where defense is innocence, not asking for a lesser included offense instruction is a permissible exercise of defense strategy); People v. Turner, 5 N.Y.3d 476, 483, 806 N.Y.S.2d 154, 840 N.E.2d 123 (2005) (decision on lesser included offenses is reasonable either way); Morrisette v. Warden of Sussex I State Prison, 270 Va. 188, 194, 613 S.E.2d 551 (2005) (failure to request a lesser included offense instruction reasonable where the instruction would weaken the defense of innocence).
[6] Because we reject Hassan's claim that his attorney provided ineffective assistance of counsel, we need not address the State's argument that Ward and a later case that followed the rationale of Ward, State v. Pittman, 134 Wash.App. 376, 166 P.3d 720 (2006), were wrongly decided. Nevertheless, we agree with the State's argument that those cases do not properly take into consideration the strong presumption of effective assistance in determining whether the decision to seek acquittal was a legitimate trial strategy. Moreover, both Ward and Pittman rely heavily on dicta that is taken out of context from Keeble v. United States, 412 U.S. 205, 212-213, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). The Court in Keeble did not address ineffective assistance of counsel or the strategic decision to pursue an all or nothing strategy in consultation with the client. The sole issue in Keeble was "whether an Indian prosecuted under the [Major Crimes Act of 1885] is entitled to a jury instruction on a lesser included offense where that lesser offense is not one of the crimes enumerated in the Act." Keeble, 412 U.S. at 206, 93 S.Ct. 1993. And unlike in Ward and Pittman, in Keeble, the defendant specifically requested a lesser included instruction.