# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47847-1-II |
| Respondent, | |
| v. | |
| JOSUE WOSBELY MALDONADO, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Josue Wosbely Maldonado appeals his convictions and sentence for two counts of assault in the first degree, each with a firearm enhancement, and one count of drive-by shooting. We conclude that he received effective assistance of counsel, and we exercise our discretion and decline to impose appellate costs. We affirm.

FACTS

On February 24, 2014, at approximately 4:00 P.M., Shwan Saber and Kenneth Lamar Jr. arrived for work at the Lakewood Towne Center. Saber observed a 2008 or 2009 gray Chrysler 300 follow Lamar's car into the parking lot. As Saber spoke with Lamar, the car pulled up beside them. The driver lowered the window and shot at Saber and Lamar with a handgun. Saber heard approximately six or eight shots in quick succession. Lamar heard no more than five shots. Two of the bullets hit Lamar, one in his right tibia and one in his left upper thigh. Saber did not get hit. The car sped away.

On February 25, Officer Jason Cannon stopped Maldonado because his vehicle matched the Chrysler 300 described in the shooting. After arresting Maldonado, officers obtained a search

warrant and searched the vehicle. The police found a silver handgun in the locked glove box. The police determined that casings from bullets found at the crime scene were shot from this handgun.

On January 20, 2015, the State charged Maldonado with two counts of assault in the first degree,[1] both with firearm enhancements,[2] and with one count of drive-by shooting.[3]

At trial, Lamar described the shooter as having light skin tone and a small mustache. He believed the shooter was of African American descent or mixed race. However, he had earlier told the police the shooter was a "thick Hispanic male." Report of the Proceedings (RP) (Jan. 21, 2015) at 294-95. Lamar denied that Maldonado shot him. Saber thought the driver looked Mexican, had light skin, a shaved head, and a small mustache. Saber identified Maldonado as the shooter with 70 percent certainty. Using a photomontage, some witnesses identified Maldonado as the shooter but others were uncertain.

At trial, Maldonado neither requested a jury instruction for assault in the second degree nor objected to the trial court's instructions.

In closing argument, Maldonado's attorney argued that Maldonado was not the shooter.[4] He argued that the identifications and descriptions by the witnesses were inconsistent. Maldonado's attorney further argued that the police officers who testified "put words in [the] mouths" of the witnesses when they described the shooter. RP (Feb. 2, 2015) at 1229. He told the jury that eyewitness testimony is a "huge problem with wrongful convictions." RP (Feb. 2, 2015)

---

[1] RCW 9A.36.011(1)(a).

[2] RCW 9.94A.533.

[3] RCW 9A.36.045(1).

[4] In closing argument, the State stated that this "is a case about a whodunit." RP (Feb. 2, 2015) at 1138. But that the evidence consistently pointed to Maldonado as the shooter.

at 1213. Maldonado's attorney attacked the photomontage used to identify Maldonado. He argued it was unduly suggestive and drew attention to Maldonado. He argued that nothing linked Maldonado to the crime other than the fact that the car was registered to him and another person, and there was a gun in the locked glove box.

The jury found Maldonado guilty of both counts of assault in the first degree, with firearm enhancements, and of drive-by shooting.

On April 24, Maldonado moved for a new trial based in part on ineffective assistance of counsel; however, he did not argue his attorney should have requested a jury instruction for assault in the second degree.

On July 9, Maldonado again moved for a new trial. Maldonado's lawyer told the trial court that he provided ineffective assistance because he "should have asked for the assault II instruction as to Mr. Saber. I didn't do that. That wasn't a tactical ploy; that was complete oversight." RP (July 10, 2015) at 10. The trial court denied the motion for a new trial and ruled that Maldonado's lawyer did not provide ineffective assistance. The trial court further ruled that Maldonado had not demonstrated any prejudice.

On July 10, the trial court sentenced Maldonado to 342 months of confinement and community custody. On July 28, the trial court entered an order of indigency. Maldonado declared that he did not have any assets or income. Maldonado appeals.

ANALYSIS

I.    INEFFECTIVE ASSISTANCE OF COUNSEL

Maldonado argues that he received ineffective assistance of counsel because his attorney did not request an assault in the second degree jury instruction.[5] We disagree.

A.    Standard of Review

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient, and (2) that the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. Representation is deficient if after considering all the circumstances, the performance falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Grier*, 171 Wn.2d at 34.

An appellant faces a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

---

[5] The parties argued the case in terms of a lesser included offense rather than an inferior degree offense. Although the analysis differs when a trial court considers a request for an instruction on an inferior degree offense and when it considers a request for a lesser included offense, the distinction between lesser included and inferior degree offense instructions is not significant in this case. *See State v. Fernandez-Medina*, 141 Wn.2d 448, 454-55, 6 P.3d 1150 (2000).

"Conversely, a criminal defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). The defense counsel's strategic decisions must be reasonable. *Grier*, 171 Wn.2d at 34.

B.      Failure to Request Assault in the Second Degree Instruction

Maldonado argues that his attorney's failure to request a jury instruction for assault in the second degree was not a reasonable trial strategy, and therefore, deficient. We disagree.

"The decision to not request an instruction on a lesser included offense is not ineffective assistance of counsel if it can be characterized as part of a legitimate trial strategy to obtain an acquittal." *State v. Hassan*, 151 Wn. App. 209, 218, 211 P.3d 441 (2009). But defense counsel can be ineffective where his tactical decision to pursue an all or nothing approach, by not requesting a lesser included instruction, is objectively unreasonable. *Hassan*, 151 Wn. App. at 218-19. "Where a lesser included offense instruction would weaken the defendant's claim of innocence, the failure to request a lesser included offense instruction is a reasonable strategy." *Hassan*, 151 Wn. App. at 220. On the other hand, determining "whether an all or nothing strategy is objectively unreasonable is a highly fact specific inquiry." *Hassan*, 151 Wn. App. at 219. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

The significant question here is not whether Maldonado is entitled to such instructions but instead whether defense counsel was ineffective in not requesting such instructions.

Although risky, an all or nothing approach was at a legitimate strategy in this case to secure an acquittal.

> A defendant who opts to forgo instructions on lesser included offenses certainly has more to lose if the all or nothing strategy backfires, but [he] also has more to gain if the strategy results in acquittal. Even where the risk is enormous and the chance of acquittal is minimal, it is the defendant's prerogative to take this gamble, provided [his] attorney believes there is support for the decision. Just as a criminal defendant with slim chances of prevailing at trial may reject a plea bargain nevertheless, a criminal defendant who genuinely believes [he] is innocent may prefer to avoid a compromise verdict, even when the odds are stacked against [him]. Thus, . . . a court should not second-guess that course of action, even where, by the court's analysis, the level of risk is excessive and a more conservative approach would be more prudent.

*Grier*, 171 Wn.2d at 39. Accordingly, we determine whether Maldonado's attorney's taking an all-or-nothing approach was objectively reasonable.

In closing argument, Maldonado argued that he did not shoot the gun, and he tried to point the jury to weaknesses with the State's case. He argued that the identifications by the witnesses were inconsistent and included minimal details to identify Maldonado as the shooter. He also argued the photomontage was unduly suggestive and drew attention to Maldonado. Maldonado's attorney asserted that "[t]here is absolutely nothing that links [Maldonado] to this, other than the fact that the car is registered to him and somebody else, and there was a gun in the locked glove box when he got the car back that day." RP (Feb. 2, 2015) at 1241. Under the defense theory put forth at trial, the identity of the shooter became the key disputed issue. Requesting an inferior degree instruction would have weakened Maldonado's claim of innocence. Inconsistencies in the witnesses' testimony regarding the identity of the shooter makes this all-or-nothing approach an objectively reasonable trial strategy.

"That this strategy ultimately proved unsuccessful is immaterial to an assessment of defense counsel's initial calculus; hindsight has no place in an ineffective assistance analysis." *Grier*, 171 Wn.2d at 43. "'A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Grier*, 171 Wn.2d at 40 (quoting *Strickland*, 466 U.S. at 689). Maldonado's lawyer commented that his failure to ask for a jury instruction on assault in the second degree for Saber was not "a tactical ploy; that was complete oversight." RP (July 10, 2015) at 10. However, this statement was made with the benefit of hindsight.

Because we conclude that Maldonado cannot satisfy his burden of proving deficient performance, we conclude that Maldonado did not receive ineffective assistance of counsel.

II.     APPELLATE COSTS

Maldonado argues that we should exercise our discretion and decline to impose appellate costs because he is indigent. We exercise our discretion and decline to impose appellate costs.

*State v. Sinclair* stated that review of appellate costs requires an individualized inquiry and necessitates that this court be mindful of the concerns raised in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015) with respect to imposition of discretionary LFOs. *State v. Sinclair*, 192 Wn. App. 380, 391, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016). We consider the issue of appellate costs in a criminal case during the course of appellate review when the issue is raised in an appellant's brief. *Sinclair*, 192 Wn. App. at 389-90. The award of appellate costs by an appellate court is discretionary. *Sinclair*, 192 Wn. App. at 385-86; RCW 10.73.170(1).

In exercising our discretion, we review the record. *Sinclair*, 182 Wn.2d at 391. The trial court sentenced Maldonado to 342 months of confinement and community custody. It then entered an order of indigency supported by Maldonado's declaration in which he stated that he had no assets or income. We presume that a party remains indigent "throughout the review" unless the trial court finds otherwise. RAP 15.2(f); RCW 10.73.160(1) vests this court with discretion to award appellate costs. We exercise that discretion and decline to award appellate costs to the State.

47847-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____

Melnick, J.

We concur:

_____

Johanson, J.

_____

Maxa, A.C.J.