IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77949-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MARTIN LUTHER CARTER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: July 22, 2019 |

ANDRUS, J. — Martin Luther Carter appeals his conviction for possession of a stolen vehicle. Carter contends his attorney committed ineffective assistance of counsel by failing to request a voluntary intoxication instruction at the conclusion of trial. Carter also contends that the trial court erred in imposing a DNA collection fee. The State concedes the DNA fee should be stricken. Because Carter has not established ineffective assistance of counsel, we affirm his conviction. We remand the case to the trial court to strike the DNA fee from the judgment and sentence.

## FACTS

On the evening of March 9, 2017, Des Moines Police Sergeant David Mohr saw a 1997 Honda idling in the parking lot of a public library. He ran the license plate and discovered the plate was associated with a 2002 Honda of a different color. Mohr walked to the car and saw an adult male, later identified as Carter,

who appeared to be passed out behind the wheel. Mohr saw through the window a piece of cloth draped over the steering column, typically used to cover ignition damage, and a piece of tin foil with heat marks, consistent with heroin use, on the center console. Sergeant Cathy Savage responded to Mohr's call for backup, and observed a screwdriver on the car's floorboard. Mohr tapped on the driver's side window to rouse Carter. Carter appeared initially to not recognize what was happening. Carter then picked up the screwdriver to turn off the vehicle when Mohr asked him to do so. Mohr saw that the steering wheel had been damaged and that there was no key for the car.

Mohr and Savage obtained the car's vehicle identification number (VIN) from the dash and determined that the registered owner of the car was Vanessa Francis. Three days earlier, Francis had reported that her 1997 Honda Accord had been stolen from the Emerald Queen Casino parking lot—the third time in six months. Francis confirmed that her license plate was AGP8331, and Mohr testified the license plate he observed did not match her car. The parties stipulated that the license plate ADB7957 belonged to a 2002 green Honda Accord and license plate AGP8331 belonged to Francis's blue 1997 Honda Accord.

Des Moines police called Francis and asked her to claim her vehicle from the library parking lot. Francis testified that the Honda's steering column and ignition had been busted out when the car was stolen the second time and she had jury-rigged a temporary starter that hung down from the column by a couple pieces of wire. Although Francis had a key that started her car, her friend hot-wired the car to start it. Francis found trash, other keys, additional license plates, and

clothing inside the car when she took possession of it. The license plates she found were not hers.

During trial, the State asked for clarification from Carter whether he intended to seek a voluntary intoxication instruction, given counsel's reference to his heroin use during opening statements and cross examination of police officers. The State indicated that if Carter intended to assert a voluntary intoxication defense, the State needed to change who it called to testify. Carter's counsel explained that she had not considered an involuntary intoxication or diminished capacity defense. Counsel stated "honestly I feel a little bit like oh, maybe I should have [raised this defense]." But, she stated, "[T]he only evidence we have is what the Court has heard." Counsel went on:

> And I think that when you're talking about knowledge, state of mind is always important and his state of mind has been brought up by the State. The state of mind that goes to knowledge is pretty much insinuated . . . by both parties. . . . I think the instruction gives the jury a formal peg to hang its consideration on. Because it highlights, it highlights the heroin use in this case. I – and maybe, you know, maybe we'll be dealing with an ineffective assistance claim later, but I had no intention of formalizing that. So that's just to be really candid, that's kind of how I was – how I was approaching things.

The State clarified that it was not suggesting there was a basis for a diminished capacity defense; "just to clarify voluntary intoxication is what I'm referring to." The Court acknowledged "I'm sorry, voluntary intoxication. . . . I mean all I have is I've got a man sleeping in a car seat." Carter's counsel acknowledged that she understood they were discussing voluntary intoxication, and not diminished capacity.

Carter's attorney stated that she intended to argue that Carter's heroin use was relevant but she did not intend to argue for a voluntary intoxication instruction

- 3 -

because "on the one hand I think it does give a boost to the defense, but on the other hand in practice I also think it creates difficulties for the defense

At that point, the State read into the record the standard voluntary intoxication instruction, WPIC 18.10:

> No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition. However, evidence of intoxication may be considered in determining whether the defendant acted with knowledge that the motor vehicle has been stolen.

The prosecutor stated "that really seems to be what Ms. McGinty intends to argue. That heroin impacted whether the defendant acted with knowledge that the motor vehicle had been stolen." The State indicated that to be entitled to a voluntary intoxication instruction, there would need to be evidence that the defendant had consumed an intoxicating drug or alcohol, and evidence that this consumption intoxicated the defendant enough to impact his ability to form the requisite mental state. While the State conceded there was evidence of heroin use, it argued there was no evidence that the consumption of heroin impacted Carter's ability to know the vehicle was stolen. The State argued that second element required expert testimony.

Carter's counsel argued that because the State elicited evidence that Carter was passed out in the car and had to be woken up, Carter was entitled to use those facts to argue his state of mind without suggesting some sort of scientific basis. Counsel also indicated Carter was entitled to argue that the evidence did not demonstrate Carter was paying attention to anything other than his heroin. Counsel stated:

I'm not saying he was incapable of knowledge, I'm just saying we don't have much evidence of it. We have – we have a cloth, and I'm entitled to make a case based on the evidence that I see.

The defense, as counsel described it, was lack of evidence:

So the defense is going to stick with that lack of evidence. There's not enough evidence to show knowledge. The defense is not going to be arguing that Mr. Carter . . . I'm not saying that Mr. Carter is not capable of knowledge. . . . So I don't think I am putting on a voluntary intoxication defense to that extent that it would need the WPIC or it would need experts or anything else.

Carter did not request a voluntary intoxication instruction and the trial court did not include it in its final instructions to the jury.

In closing argument, Carter acknowledged that the sole issue in the case was knowledge—whether Carter knew the car was stolen. She pointed to the fact that the car's doors and windows were not damaged or broken, that Carter had not damaged the steering column as that had occurred earlier, and the police did not connect anything inside the car, such as the other cars' license plates, to Carter. Counsel pointed out:

[W]e don't know who took the car, we don't know who was driving the car. We don't know how the car got into the parking lot. We don't know about how long the car was there. We don't know if somebody abandoned it there. . . . We don't know if somebody was dealing drugs in that car.

In addressing Carter's state of mind, counsel argued that it was undisputed that Carter was using drugs and was passed out at 6 p.m. That evidence, counsel contended, was the only evidence presented by the State as to Carter's state of mind: "And what your common sense can also tell you, is that when somebody is using drugs, especially that kind of drugs . . . , that's their focus. That's their state of mind. Their state of mind is the drugs and that's the kind of knowledge that we

also have." Counsel suggested that Carter may have simply decided that the car—any car, stolen or otherwise—was a safe, dry place to use heroin. ("[A car] being used as a sort of dry area to use drugs in doesn't give you knowledge"). The theme of the defense case, from opening statement to closing argument, was that Carter was so focused on his heroin use that he did not notice signs—such as the punched steering column or the cloth draped across it—that suggested the car may have been stolen.

The jury found Carter guilty, the trial court sentenced Carter to 13 months in prison. Carter appeals his conviction, asserting ineffective assistance of counsel in failing to request a voluntary intoxication instruction.[1]

## ANALYSIS

Effective assistance of counsel is guaranteed by both the Sixth Amendment and article 1, section 22 of the Washington Constitution. State v. Hendrickson, 129 Wn.2d 61, 77, 917 P.2d 563 (1996); Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, Carter must show that (1) his counsel's performance was deficient and fell below the standard of reasonableness and (2) that the deficient performance prejudiced him in that but for the deficient performance, the result would have been different. In re Gomez, 180 Wn.2d 337, 347-348, 325 P.3d 142 (2014); State v. Hassan, 151 Wn. App. 209, 216, 211 P.3d 441 (2009). This court

---

[1] Carter also challenges the imposition of a $100 DNA collection fee. The State concedes the DNA fee should not have been imposed because the State's records show that Carter's DNA was previously collected. We accept this concession and need not address this assignment of error further.

reviews claims of ineffective assistance of counsel *de novo*. Gomez, 180 Wn.2d at 347.

The appellate court presumes the defendant was properly represented. Hendrickson, 129 Wn.2d at 77; Gomez, 180 Wn.2d. at 348 (quoting Strickland, 466 U.S. at 690). The defendant bears the burden of showing that, based on the record, there are no legitimate strategic or tactical reasons for the challenged conduct. Hendrickson, 129 Wn.2d at 77-78; Hassan, 151 Wn. App. at 217.

Carter argues there was no strategic reason to forego a voluntary intoxication instruction. We reject this argument as inconsistent with the trial record. Carter's counsel told the court that she deemed the voluntary intoxication instruction to be a double-edged sword for defendants. While the instruction helped focus jurors on the knowledge element, in practice, the instruction also made an acquittal more difficult. Trial counsel affirmatively stated she had no intention of arguing Carter was so intoxicated that he was incapable of knowledge; merely that he was so preoccupied with his drug use that he paid no heed to signs that the car may have been a stolen vehicle.

This theory of the case was evident in counsel's opening statement and closing argument. Trial counsel argued the State had no evidence that Carter knew the car was stolen and all the State had were police officers' unfounded assumptions of what had occurred.[2] Trial counsel contended that the evidence

---

[2] In her opening statement, Carter's attorney argued that the "evidence is not going to show a connection between . . . Carter and possession of a stolen vehicle;" that "[t]he only evidence is going to be . . . Carter at the library passed out with a piece of tinfoil on the seat next to him;" that "the state is going to ask [the jury] to make conclusions about [Carter's] state of mind from what the *police thought was going on;*" and that Carter should be found not guilty "based upon the lack of evidence and the lack of connection to the crime charged." (Emphasis added).

was consistent with a drug user opportunistically using a car as shelter to use heroin. And while heroin use affected Carter's state of mind, counsel argued, his focus was on the drugs, and not on signs that the car might be stolen.

We cannot conclude that this trial strategy fell below the standard of objective reasonableness. Carter's attorney made a strategic choice to argue that Carter was so focused on using heroin that he simply did not notice anything about his surroundings, including the punched ignition and damaged steering column. Based on the defense Carter pursued, it was objectively reasonable to refrain from requesting a jury instruction that may have suggested Carter's use of heroin was "voluntary," rather than an addiction. Under these circumstances, we will not second-guess trial counsel's decision to forego a voluntary intoxication jury instruction when counsel deemed that instruction unnecessary to the defense theory of the case and potentially damaging to her client.

Even if Carter's attorney made an unreasonable strategic choice, Carter has not demonstrated he was prejudiced. Carter did not show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 S. Ct. at 694. The State had overwhelming evidence to prove Carter knew the car was stolen: the steering column was visibly damaged in a way consistent with theft, a cloth covered the steering column to hide the damage, there were no keys in the ignition, the car was running when Mohr approached the car, and Carter knew how to use a screwdriver to turn off the idling car. In light of this evidence, it is unlikely the jury would have rendered any other verdict even if it had considered that Carter's

voluntary intoxication affected his mental state. Carter thus fails to show that the failure to request the voluntary intoxication instruction prejudiced the outcome of his trial. Carter's ineffective assistance of counsel claim fails.

For these reasons, we affirm Carter's conviction but remand to strike the DNA fee from the judgment and sentence.

WE CONCUR:

Andrus, J.

Chun, J.