# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>TONY DALE MILLER,<br><br>Appellant. | No. 84177-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Tony Miller appeals his conviction of second degree assault, asserting the trial court erred by refusing to give an instruction on defense of property, ineffective assistance of counsel for failing to obtain a defense of property instruction, error in requiring a substance abuse evaluation, and lack of statutory authority for four legal financial obligations. We affirm Miller's conviction and remand with instructions to limit the substance abuse evaluation to alcohol, inquire concerning Miller's ability to pay discretionary legal financial obligations, and strike unauthorized financial obligations.

I

On the evening of July 3, 2019, Jared Simicich and his girlfriend, Nichole Potebyna, began lighting off fireworks in the middle of the street near both Potebyna's and Miller's homes. From his bedroom window, Miller yelled profanities at Simicich and Potebyna, demanding that they stop the fireworks. Miller was upset because the fireworks had woken his newborn son. Simicich and his girlfriend began yelling back, claiming they were not the only ones lighting off

fireworks. The couple continued to light fireworks. Miller went out to his front porch, and eventually the street, continually referring to Potebyna with a derogatory word. During the confrontation in the street, Aimee Kleidosty, a neighbor, came outside and tried to keep the argument from escalating. Miller went back into his house, and Simicich and Potebyna walked back to Potebyna's house. Miller soon came back outside and started yelling again. Kleidosty testified Miller continued to direct derogatory terms toward Potebyna.

Simicich walked back into the road, asking Miller to "watch his mouth." Miller continued, and Simicich started to walk towards Miller's front porch. Miller testified he yelled at Simicich to leave and to get off his property. Simicich continued to the bottom step of Miller's porch. Miller remained at the top of the stairs. Miller testified that he thought he was in danger, so he was trying to protect himself when he headbutted Simicich, causing Simicich to fall backwards. While falling, Simicich hit his head on a large smoker in Miller's front yard. Potebyna testified Simicich "just laid lifeless, motionless." Two witnesses testified Miller came over the top of Simicich, straddled him, and started to elbow him in the face multiple times. Miller testified Simicich grabbed onto him, which caused the two men to fall off the porch together. Miller further testified he delivered three elbows to Simicich's face to get Simicich to release him. The State later charged Miller with second degree assault.

Before trial, Miller filed a notice of intent to present defense of self or others. Miller cited RCW 9A.16.020(3), stating that the use of or attempt to use force upon the person of another is not unlawful where " 'used by a party about to be injured,

2

or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person . . . in case the force is not more than is necessary.' " (Alteration in original.) Miller's filing used the quoted ellipsis to omit the part of RCW 9A.16.020(3) covering use of force to prevent malicious interference with property. In Miller's proposed jury instructions, he requested a self-defense jury instruction, but not one for defense of property. Following the language of RCW 9A.16.020(3), the pattern jury instruction from which Miller's self-defense instruction was drawn includes an optional paragraph that Miller omitted: "[The [use of] [attempt to use] [offer to use] force upon or toward the person of another is lawful when [used] [attempted] [offered] in preventing or attempting to prevent a malicious trespass or other malicious interference with real or personal property lawfully in that person's possession, and when the force is not more than is necessary.]" 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.02, at 282 (5th ed. 2021) (alterations in original). In Miller's trial brief, he again noted "[t]he defense is self-defense."

The jury convicted Miller as charged. At sentencing, the court ordered Miller to complete an anger management evaluation and a substance abuse evaluation. Regarding legal financial obligations, the trial court noted that it was imposing "the $500 victim penalty assessment, the $200 filing fee, the $100 DNA[1] fee, and I will sign a separate order to provide a DNA sample. I believe those are the only applicable fees." However, the judgement and sentence additionally included language that Miller shall "pay supervision fees as determined by [the Department

---

[1] Deoxyribonucleic acid.

of Corrections]." The trial court inquired into Miller's ability to pay through the following dialogue:

> THE COURT: Mr. Miller, I have not asked you what other financial obligations you have. You said you have rent, you have [a] car bill. Obviously you have family support obligations, but if there is information that you wish to provide me about your need to pay towards financial obligation, I am happy to hear what you want to offer. On the other hand, if you think that you can pay $20 a month towards this $800 legal financial obligation bill beginning three months after release from confinement, I am satisfied that I can set it at that amount.
>
> THE DEFENDANT: $20 is fine.
>
> THE COURT: I will adopt that amount.

Ten days later, the trial court granted Miller an order of indigency authorizing the expenditure of public funds to prosecute this appeal, finding Miller "lack[ed] sufficient funds to prosecute an appeal."

II

For the first time on appeal, Miller argues the trial court provided incomplete jury instructions because it omitted an instruction on defense of property. Citing State v. Vander Houwen, Miller argues his conviction violated the Fourteenth Amendment, because the State was not held to its burden to disprove defense of property despite there being some evidence that would have supported the defense of property instruction. 163 Wn.2d 25, 177 P.3d 93 (2008).

Generally, we will not entertain a claim of error not raised before the trial court. RAP 2.5(a). An exception to that general rule is RAP 2.5(a)(3), which gives this court discretion to reach an issue not raised at trial if the party asserting it demonstrates a manifest error affecting a constitutional right. State v. Gordon, 172

Wn.2d 671, 676, 260 P.3d 884 (2011). "Stated another way, the appellant 'must identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.' " State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (alteration in original) (quoting State v. Kirkman, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007)). To be manifest, the error must have practical and identifiable consequences apparent on the record that should have been reasonably obvious to the trial court. Id. at 108.

Although Miller is correct that failing to instruct on defense of property could raise a constitutional issue, any error was not manifest. Miller argues that the State unfairly capitalized on the absence of a defense of property instruction during closing argument. The State argued, "It might be nice if the law in this case said someone comes on your property, you do what you want to assault him to get him off your property. That's not the case here. The case here says he has to be in reasonable fear that he is going to be injured." Contrary to Miller's argument, the State did not argue that the use of force is never allowed to defend property, but only that it is not the case that a person acting in defense of property can "do what [they] want" to an intruder. In context, the State was speaking to Miller's stated defense at trial, for which Miller never gave testimony supporting defense of property as a factual matter, but instead relied on Simicich's intrusion only to the extent it was evidence he posed a threat of injury to Miller. As the defense closing emphasized: "And contrary to my colleague's assertion that you can't use force to defend property, absolutely you can if you reasonably believe you are about to be injured on your property. What is the significance of the property? The property—

5

the significance of [Simicich] going on the property is that it strengthens [Miller's] claim that he acted reasonably, *that he believed he was about to be injured*." (Emphasis added.)

Miller did not raise defense of property, the record suggests Miller intentionally chose not to raise defense of property, and Miller did not testify or argue that he was acting in defense of property. It was not obvious to the trial court that omission of the instruction constituted error. The trial court's failure to sua sponte instruct the jury on defense of property was not manifest error. We therefore decline to reach this issue under RAP 2.5(a)(3).

III

Miller next argues his trial counsel provided ineffective assistance by failing to obtain a defense of property instruction. We disagree.

Our federal and state constitutions guarantee an accused person the right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. We apply the two pronged test from Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) for evaluating whether a defendant had constitutionally sufficient representation. State v. Estes, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To demonstrate ineffective assistance of counsel, the defendant must show: (1) that his counsel's performance was deficient, defined as falling below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant, i.e., there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Strickland, 466 U.S. at 687-88, 694.

A

Washington courts begin with a strong presumption that counsel's representation was reasonable. Estes, 188 Wn.2d at 458. This court presumes adequate representation if there is any " 'conceivable legitimate tactic' " that explains counsel's performance. In re Det. of Hatfield, 191 Wn. App. 378, 402, 362 P.3d 997 (2015) (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). The reasonableness of counsel's performance is evaluated from " 'counsel's perspective at the time of the alleged error and in light of all the circumstances.' " In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004) (quoting Kimmelman v. Morrison, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)). To rebut the presumption of reasonableness, a defendant must establish an absence of any legitimate trial tactic that would explain counsel's performance. In re Pers. Restraint of Lui, 188 Wn.2d 525, 539, 397 P.3d 90 (2017).

Miller's counsel's failure to request the defense of property instruction was a legitimate trial tactic. Defense of property is absent from Miller's notice of intent to present defense of self, Miller's proposed instructions, and Miller's trial brief. Miller did not mention defense of property at any point during his opening statement, his trial testimony, or his closing argument. These apparently intentional omissions of defense of property can be characterized as a conceivable legitimate tactic consistent with the starting presumption of reasonable representation. Defense counsel may reasonably decline to pursue avenues that are potentially counterproductive. State v. Wood, 19 Wn. App. 2d 743, 780-81, 498 P.3d 968 (2021) (not deficient performance to decline to divert efforts to

locating a witness), review denied, 199 Wn.2d 1007, 506 P.3d 647 (2022); State v. Hassan, 151 Wn. App. 209, 220, 211 P.3d 441 (2009) (not deficient performance to not request a lesser included offense instruction that might weaken a claim of innocence); State v. Johnston, 143 Wn. App. 1, 17, 177 P.3d 1127 (2007) (not deficient performance to opt against voir dire that might antagonize jurors). As discussed further below, it was reasonable for defense counsel to conclude a jury would think poorly of a claim that a violent assault, disconnected from any fear of bodily injury, was reasonable merely to stop a property trespass. Because it was a stronger defense to argue that Miller feared for his own safety, Miller has not demonstrated deficient performance.

B

Miller also cannot establish prejudice. Prejudice exists if there is a reasonable probability that "but for counsel's deficient performance, the outcome of the proceedings would have been different." State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "Reasonable probability" in this context means a probability sufficient to undermine confidence in the outcome. Estes, 188 Wn.2d at 458. A defendant must affirmatively prove prejudice, not simply show that " 'the errors had some conceivable effect on the outcome.' " State v. Crawford, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006) (quoting Strickland, 466 U.S. at 693).

To show deficient conduct based on failure to request a jury instruction, the defendant must establish that he would have been entitled to the instruction. See State v. Cienfuegos, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001). Because we conclude there was neither deficient performance nor prejudice in this case, we do

not decide whether a defense of property instruction would have been available if Miller had asked for one. While generally the reasonableness of the amount of force used is a question for the jury, Washington decisions nevertheless observe that there are limits on the amount of force that may be used to protect a mere property interest. In State v. Murphy, a property owner brandished a gun at environmental control agents who were inspecting the premises of his construction business. 7 Wn. App. 505, 506-07, 500 P.2d 1276 (1972). We held,

> Under the statute [RCW 9.11.040] or under the common law, the use of a deadly weapon by a private party to eject a mere nonviolent, nonboisterous trespasser, who, at most can be understood to be interfering with a private party's intangible proprietorial interest, is, as a matter of law, not a justifiable use of force.

Id. at 514. In State v. Madry, we held that the use of deadly force to recover a small amount of money, stolen from the defendant by someone he knows, is unreasonable as a matter of law. 12 Wn. App. 178, 180-81, 529 P.2d 463 (1974).

In attempting to articulate prejudice, Miller emphasizes that, in general, defense of property does not depend on the defendant having any fear of bodily injury. See State v. Bland, 128 Wn. App. 511, 513 n.1, 116 P.3d 428 (2005). Here, by finding Miller guilty, the jury necessarily found he either did not fear bodily injury or used force disproportionate to that necessary in light of any fear he may have had, or both. This was a violent assault. Simicich had a total of five fractures in his face, had staples in his head, and had a plate placed in the back of his eye to hold it in the socket. His vision was impaired after the assault, and he has both short and long term memory loss. There is no reasonable probability a jury would

9

view this violent assault as a reasonable use of force to stop a mere property trespass. Miller's ineffective assistance of counsel argument fails.

IV

Miller next challenges the requirement of a substance abuse evaluation, arguing the trial court never found that chemical dependency contributed to the offense. This court reviews a trial court's statutory authority to impose a particular community custody condition de novo. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If a trial court does have statutory authority, the imposition of conditions is reviewed for abuse of discretion. Id.

RCW 9.94A.607(1) allows a court to order chemical dependency treatment if it finds that the defendant has any chemical dependency that has contributed to their offense. "If the court fails to make the required finding, it lacks statutory authority to impose the condition." State v. Warnock, 174 Wn. App. 608, 612, 299 P.3d 1173 (2013). However, a court may impose a chemical dependency evaluation if the "record amply supports its decision," "[e]ven [when] the trial court failed to check the box indicating that [the defendant] had a chemical dependency." State v. Powell, 139 Wn. App. 808, 820, 162 P.3d 1180 (2007), rev'd on other grounds, 166 Wn.2d 73, 206 P.3d 321 (2009).

In Powell, Powell attempted to break into his ex-girlfriend's house. Id. at 811. At trial, the State presented testimony that Powell took methamphetamine before the incident. Id. at 813. Powell and the State requested the trial court impose a chemical dependency evaluation. Id. at 820. The trial court did not check the box on the judgment and sentence indicating that a chemical dependency

10

contributed to Powell's offense, and Powell challenged the chemical dependency treatment condition on that basis. Id. at 819-20. We affirmed, concluding that "[e]ven though the trial court failed to check the box indicating that Powell had a chemical dependency, the record amply supports its decision." Id. at 820.

The trial court in this case did not check the box in the judgment and sentence indicating that Miller had a chemical dependency that contributed to the offense. However, unlike Powell, the record does not support a conclusion that chemical dependency contributed to the offense. Miller testified he consumed "one glass of whiskey, three fingers deep" on the night in question and the whiskey had no effect on him. Furthermore, a sheriff's deputy who responded to the incident testified he did not document that Miller exhibited signs of intoxication. Because there was no evidence Miller had a chemical dependency and therefore no evidence that one contributed to the offense, RCW 9.94A.607 did not provide authority to order a substance abuse evaluation.

Under RCW 9.94A.703(3)(c) and (d), a court may order a defendant to engage in substance abuse treatment if the substance abuse was either "crime related" or "reasonably related to the circumstances of the offense." However, where there is no evidence that substances other than alcohol contributed to a crime, substance abuse evaluation and treatment must be restricted to alcohol. State v. Munoz-Rivera, 190 Wn. App. 870, 893, 361 P.3d 182 (2015). In Munoz-Rivera, Munoz-Rivera was charged with second degree assault of his live-in girlfriend and aggravated second degree assault of her daughter. 190 Wn. App. at 876, 878. At trial, the State presented evidence that Munoz-Rivera had been

drinking before the incident. Id. at 877. Munoz-Rivera challenged the chemical dependency treatment condition on the basis that it required him to undergo treatment for substances other than alcohol. Id. at 893. This court reversed, concluding that "because there is no evidence that substances other than alcohol contributed to Mr. Munoz-Rivera's crimes, substance abuse evaluation and treatment must be restricted to alcohol." Id.

The evidence indicated that Miller had consumed alcohol the evening of the assault. It was not an abuse of discretion for the trial court to conclude alcohol use was reasonably related to the circumstances of the offense under RCW 9.94A.703(3)(d). But like Munoz-Rivera, there is no evidence that substances other than alcohol contributed to Miller's crimes. RCW 9.94A.703(3)(d) provides authority supporting a substance abuse evaluation, but it must be limited to alcohol. We remand for the trial court to limit that condition accordingly.

V

Miller argues the trial court erroneously imposed four legal financial obligations: the criminal filing fee, the victim penalty assessment, the community custody supervision fees, and the DNA fee. The State concedes remand is appropriate to determine whether Miller was indigent for the purposes of the criminal filing fee and the victim penalty assessment and to strike the imposition of the supervision fee and DNA fee. Wash. Court of Appeals oral argument, State v. Miller, No. 84177-7-I (September 15, 2023), at 18 min., 44 sec. to 19 min., 17 sec., https://tvw.org/video/division-1-court-of-appeals-2023091189/?eventID=202309. We accept the State's concession, and remand accordingly.

We affirm Miller's conviction and remand for proceedings consistent with this opinion.

_____
Birk, J.

WE CONCUR:

_____          _____
Feldman, J.                       Chung, J.